[Crim. No. 21724. First Dist., Div. Two. Sept. 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY D. ELKINS, Defendant and Appellant.

COUNSEL

James D. Hollister for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SMITH, J.**—Appellant Jeffrey Elkins was convicted of robbery (Pen. Code, § 211) and first degree murder (Pen. Code, §§ 187, 189) and was also found to have used a deadly weapon in the commission of each offense (Pen. Code, § 12022, subd. (b)).

In this appeal from the judgment of conviction, he contends that: (1) the misstatement of an instruction by a juror during deliberations constitutes prejudicial jury misconduct; and (2) the trial court committed

prejudicial error in reinstructing the jury. We reject these contentions and uphold the judgment.

Appellant was a drug user and on occasion had purchased marijuana and cocaine from the murder victim, Larry Ecklund. Ecklund, a drug dealer, often carried and displayed large sums of money. On the night of the murder, appellant, who with Ecklund was to spend the night at the home of a mutual friend, knew that Ecklund had in his possession a large sum of money. That evening, appellant entered the bedroom where Ecklund was sleeping and took $1,500 from his wallet. In the ensuing struggle, appellant killed Ecklund.

The facts at this point are disputed. The state introduced circumstantial evidence that appellant took the victim's wallet after striking him on the head with a baseball bat while he lay in bed, thus indicating that appellant had committed a robbery. (See Pen. Code, § 211.) Appellant, on the other hand, testified that he took the victim's wallet while he was sleeping. He stated that he hit the victim with the bat outside the bedroom when the victim pursued him and attacked him with a knife.

Appellant's defense was that he had committed grand theft rather than robbery because he had not taken the wallet from Ecklund's person or immediate presence and had not accomplished the taking by force or fear. He further asserted that he could not be convicted of felony murder because the killing was not the result of his attempt to secure possession of the money but was in defense to Ecklund's attack with the knife.

During their deliberations, the jury requested reinstruction on the offenses of grand theft, robbery, burglary, and first and second degree murder, as well as a rereading of appellant's testimony. Later that same day, at the request of defense counsel, the court again reinstructed the jury on burglary and felony murder. Twenty-five minutes later, they returned with their verdict. Immediately after the verdict, defense counsel asked the judge to instruct the jury that they might talk to the attorneys.

Appellant subsequently made a motion for a new trial on the grounds of jury misconduct and improper instruction by the court, which was denied. Thereafter, appellant was sentenced, and this appeal was taken.

Appellant maintains that the trial court erred in denying his motion for new trial on the ground of jury misconduct. (Pen. Code, § 1181.)[1]

Appellant's motion for a new trial was supported by the declarations of jurors Carrillo and Yambao. That portion of juror Yambao's declaration which was admitted into evidence stated in relevant part that, after reinstruction and the rereading of appellant's testimony and during deliberations, juror Delmore stated that the judge had instructed that the crime of grand theft became robbery, as a matter of law, if the value of the property taken exceeded $1,000. Yambao also alleged that this alleged misstatement of the law was repeated several times during deliberations by other unidentified jurors. Portions of the affidavit of juror Carrillo were also admitted which corroborated these allegations. In his own affidavit, juror Delmore neither denied nor admitted the alleged misstatement of the court's instruction.

Appellant contends that the declarations of jurors Yambao and Carrillo, although admitted into evidence, were not considered by the trial court and submits that the court should have considered them in determining whether juror misconduct had occurred. He alleges that Delmore's statement constitutes misconduct because he was instructing the jurors on the law, a function exclusively within the province of the trial judge.

In addressing appellant's contention, we note that, although the court admitted the affidavits into evidence after striking certain portions at the suggestion of the prosecution, it expressed the belief that the affidavits were entirely subjective and therefore inadmissible. Its denial of appellant's motion for a new trial therefore appears to have been based upon the belief that the affidavits were entirely inadmissible, not upon the belief, after a consideration of their contents, that no juror misconduct had occurrred.

■ A juror's affidavit may be used to impeach a verdict under the circumstances provided for in section 1150 of the Evidence Code. That section provides in subdivision (a) as follows: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occur-

---

[1] Penal Code section 1181, subdivision 3 provides for a new trial "[w]hen the jury has ... been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

ring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

In interpreting Evidence Code section 1150, the California Supreme Court in *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349-350 [78 Cal.Rptr. 196, 455 P.2d 132] held that the conduct, conditions or events which are alleged to have influenced the jury improperly must consist of overt acts which are objectively ascertainable, i.e., influences which are open to sight, hearing and other senses and thus subject to corroboration. The court made it clear, however, that a verdict may not be impeached by affidavits whose effect is to prove the subjective reasoning processes of a juror which can be neither corroborated nor disproved. (*Ibid.*; see also *People* v. *Hall* (1980) 108 Cal.App.3d 373, 380-381 [166 Cal.Rptr. 578].) "This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own *or his fellow jurors'* mental processes or reasons for assent or dissent." (*Hutchinson, supra*, at p. 350; italics added.)

We conclude that the unrefuted statement ascribed to juror Delmore reflects his subjective mental processes during deliberations and was therefore inadmissible. As noted above, the court in *Hutchinson* emphasized that a juror may not upset a jury verdict "by impugning ... his fellow jurors' mental processes or reasons for assent or dissent." (*Ibid.*; see also 25 U.Chi. L.Rev. 360, 362 (1951).)

A similar conclusion was reached in *United States* v. *Stacey* (9th Cir. 1975) 475 F.2d 1119, 1121 where, in holding that defense counsel might not depose jurors as to whether any of them had misunderstood the court's instructions, the court observed: "[i]t is true that some jurors had the knowledge which would enable them to testify, objectively, of incidents tending to indicate that other jurors may have misunderstood the court's instructions on the elements of offense. However, the inquiry would still concern the mental processes by which the jurors reached their decision and would therefore be barred by the nonimpeachment rule. The reason for a rule barring a juror from testifying concerning his own mental processes—frankness and freedom of discussion in the jury room, [citation]—applies with equal force to testimony by other jurors concerning objective manifestations of those processes." (See also *People* v. *Flores* (1979) 92 Cal.App.3d 461, 468-469 [154 Cal.Rptr.

851] (hg. den. June 27, 1979); *State* v. *Domabyl* (Minn. 1979) 272 N.W.2d 745, 746-747.)

We therefore hold that the trial court did not err in refusing to consider the affidavits of jurors Carrillo and Yambao because the subject matter involved the subjective mental processes of juror Delmore. The subjective quality of one juror's reasoning is not purged by the fact that another juror heard and remembers the verbalization of that reasoning. To hold otherwise would destroy the rule of *Hutchinson* which clearly prohibits the upsetting of a jury verdict by assailing these subjective mental processes. It would also inhibit and restrict the free exchange of ideas during the jury's deliberations.

Citing *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], appellant further submits that the trial court erred in striking certain portions of the affidavits of jurors Carrillo and Yambao which reported disagreement of the jurors regarding whether appellant had committed grand theft, burglary or robbery. That case, however, is distinguishable. In *Krouse*, our Supreme Court held that the trial court should have considered jurors' declarations which appeared to indicate that the jury had openly discussed or agreed to a verdict in favor of plaintiffs to include an amount estimated to compensate them for legal fees where attorney's fees were not recoverable. (*Id.*, at pp. 79-82.) Here, however, the affidavits in question merely show some confusion among the jury; there is no indication of any open discussion or agreement among the jurors evidencing a deliberate refusal to follow the court's instructions.

Appellant next alleges that the trial court committed prejudicial error because, in reinstructing the jury, it emphasized prosecution oriented instructions relating to the felony-murder rule to such an extent that it excluded from their consideration his defense that, if a felony had been committed, it had terminated before the killing. Appellant also alleges that part of the reinstruction was given extemporaneously and was confusing. This contention, being wholly without merit, will be answered briefly.

Jury instructions as read initially by the court were approved by both sides. The following morning, at the jury's request, the court reinstructed them on grand theft, burglary, robbery, and first and second degree murder. After reinstruction, the court answered extemporaneously ju-

rors' questions which focused on grand theft, burglary, robbery and felony murder.

    ■ Appellant's assignment of error focuses on certain reinstruction by the trial judge of the requisites of the felony-murder rule. He alleges that the court failed at this time to instruct properly that if the felony had been completed by the time of the killing, he could not be convicted of felony. The record, however, refutes this allegation. The court initially restated all the agreed-upon instructions pertinent to robbery and burglary, including the rule pertaining to the termination of a felony. In response to the foreperson's request to clarify the difference between grand theft, on the one hand, and robbery or burglary on the other, the court again included the instruction on the termination of the felony. The record shows that the distinction between grand theft and robbery or burglary was also given during the dialogue between the court and juror No. 12. Moreover, after the jury was read appellant's testimony, the court again instructed them extemporaneously, at appellant's request, on the rules pertaining to the termination of a felony. The required elements were thus reenforced in the jurors' minds only 25 minutes before they announced their verdict.

Appellant also complains that at one point the court, in an apparent demonstration of its belief in his guilt, slapped the bench when it stated, "[i]f you find the killing is a result of a burglary, it is first degree murder." The record, however, fails to indicate such action.

    ■ Appellant further complains of the court's statement: "I could tell you in about five words, but the law won't let me tell you." He maintains that this remark may have been construed by jurors as belief in his guilt. The record, however, does not support this contention. The remark was made in the following context: "The Court: All right. And don't worry if you have to come back and ask later. This is complicated, the law of homicide. I could tell you in about five words, but the law won't let me tell you. And these definitions are tricky, but if you think them through you will see they are not so tricky. That's why I wanted to let you ask questions." The record thus indicates that the court was discussing the law at this point and not appellant's case.

    ■ Put plainly, when reinstructing the jury and answering questions posed by jurors, the court does not, contrary to appellant's argument, commit error merely because it paraphrases previously given instructions. (See *People* v. *Rigney* (1961) 55 Cal.2d 236, 245-246 [10

Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].) The real issue is whether the law was correctly stated. Here there was an effort to clarify points of law for jurors including the points which were at the heart of appellant's defense. The record indicates that the instructions were neither confusing nor inconsistent. We find that the law was correctly stated, and there was no error in instruction by the trial court.

The judgment is affirmed.

Rouse, Acting P. J., and Miller, J., concurred.