[No. D014082. Fourth Dist., Div. One. Oct. 1, 1992.]

LUCY GILCREST MESECHER, Plaintiff and Respondent, v.
COUNTY OF SAN DIEGO et al., Defendants and Appellants.

## COUNSEL

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, David Florance and Ricky Sanchez, Deputy County Counsel, for Defendants and Appellants.

Backes & Friesen, Peter C. Friesen, Karl E. Sorenson and Marie Backes for Plaintiff and Respondent.

## OPINION

**WIENER, Acting P. J.**—The defendants San Diego County and San Diego County Deputy Sheriff David Hawkins[1] appeal the judgment entered on the jury's verdict awarding plaintiff Lucy Mesecher damages of $114,880. As we shall explain we reject County's claim of jury misconduct, concluding the declarations from six jurors are inadmissible to impeach the verdict under Evidence Code section 1150, subdivision (a). We also conclude reversal is not required even though we agree with County that the separate jury verdicts on Mesecher's causes of action for battery and federal civil rights violation are inconsistent. We decide County's tactical decision to submit potentially conflicting questions for the jury to answer on the special verdict constitutes a waiver of County's right to assert prejudice on this ground. We therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

### I

Mesecher, a criminal defense attorney, was at the county jail with other defense attorneys to appear on behalf of a client for a superior court video

---

[1] For convenience, we refer to defendants collectively as "County."

arraignment. Because the arraignment was unexpectedly delayed Mesecher left the arraignment room early to avoid being late for another court appearance. When she reached the visitor's exit, she was not allowed to leave because she did not have appropriate identification. Jail personnel rejected her explanation that she had been in video arraignments and her offer to accompany the officers to the arraignment room so they could verify her story. During her return to the video arraignment room, she encountered Hawkins.

Viewed in the light most favorable to Mesecher on her battery cause of action and consistent with her testimony, the jury found Hawkins twisted Mesecher's arm behind her back, administered a compliance hold and forced her to the ground. The jury awarded Mesecher damages of $114,880 for this tortious conduct.

Hawkins' testimony directly contradicted Mesecher's on the nature and extent of the force he used. Hawkins explained he was only attempting to guide Mesecher from a restricted area when she became hysterical and uncontrollable. Hawkins expressly denied throwing Mesecher to the ground or twisting her arm.

## II

At trial the liability issue presented to the jury was whether the force used by Hawkins constituted a battery and/or a violation of Mesecher's civil rights under 42 United States Code section 1983.[2] Accordingly the court instructed the jury on both theories. The court explained to the jury Hawkins could lawfully use force against Mesecher, but County would be liable for battery or a civil rights violation if such force were unreasonable or excessive.[3] Even though the jury instructions for battery and civil rights violation were phrased differently the jury was asked to decide the identical question —whether Hawkins used excessive force—in order to determine County's liability.

---

[2] 42 United States Code section 1983 provides in part:

"Every person who, under color of any . . . State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

[3] On this issue, the court instructed the jury as follows:

"BATTERY—DEFINITION OF

"A battery is any intentional, unlawful and harmful or offensive contact by one person with the person of another. [¶] The intent necessary to constitute battery is not an intent to cause harm, but an intent to do the act which causes the harm."

"USE OF FORCE BY POLICE IN LAWFUL DETENTION

"If a person knows, or by the exercise of reasonable care, should know, that a lawful detention is being made by a police officer, it is the duty of such person to refrain from resisting or interfering with such detention. A detaining officer may use such force as is

The verdict form, prepared jointly by the parties, asked the jury two questions on the battery and civil rights causes of action respectively: "1. Was any intentional, unlawful and harmful contact made upon the person of Lucy Mesecher? 2. Was excessive force used in detaining Lucy Mesecher?"

The jury answered "yes" to question 1 pertaining to the battery cause of action and "no" to question 2 on the civil rights violation.

The jury responded to the third question on the extent of damages Mesecher suffered as a result of the improper conduct by awarding her $114,880. The court later denied County's motions for a new trial on the battery cause of action and/or judgment notwithstanding the verdict.

## DISCUSSION

## I

## JURY MISCONDUCT

■  County's principal argument is that because of jury misconduct the court was required to grant its new trial motion on the battery cause of action.

Shortly after trial, County sent a letter to each of the jurors, asking them to "describ[e] the jury deliberations and the results reached." Six jurors responded, each reciting in narrative form how they and the other jurors reached their conclusions on the battery cause of action. Although each juror's style was different, with respect to the issue here the contents of the declarations were essentially the same. The jurors said that during deliberations they, and other jurors, defined a "battery" as contact which is intentional *or* unlawful *or* harmful *or* offensive. This definition conflicted with

reasonably necessary to effect a lawful detention. However, a police officer who uses more force than is reasonably necessary to effect a lawful detention commits a battery upon the person detained as to such excessive force."

"PLAINTIFF'S CLAIM—UNLAWFUL POLICE CONDUCT

"[T]he plaintiff alleged that . . . defendant . . . [violated her] Constitutional right to be free from the excessive use of force against her person."

"EXCESSIVE FORCE

"Plaintiff claims that she was subjected to excessive force by the defendant when he detained her. In that regard, you are instructed that every person has the right not be subjected to unreasonable or excessive force by a law enforcement officer. On the other hand, in making a lawful detention an officer has the right to use such force as is necessary under the circumstances. Whether or not the force used was unnecessary, unreasonable or excessive is an issue to be determined by you in the light of all the surrounding circumstances, on the basis of that degree of force a reasonable and prudent officer would have applied under the circumstances . . . ."

the court's instruction, which provided a battery "is any intentional, unlawful *and* harmful or offensive contact by one person with the person of another." (Italics added.) According to the declarations, a majority of the jurors relied on the juror definition to conclude Hawkins committed the battery because he *intended* to have contact with Mesecher, even though the jurors did not think the contact was harmful, unlawful or offensive.

County submitted the six declarations in support of its new trial motion. (See Code Civ. Proc., § 657.) County contended, as it does here, the jurors' misstatements of the law on battery constituted prejudicial misconduct requiring the court to grant a new trial. We conclude the declarations are inadmissible to impeach the verdict.

While "jurors may testify to 'overt acts'—that is, such statements, conduct, conditions, or events as are 'open to sight, hearing, and the other senses and thus subject to corroboration'—[they] may not testify to 'the subjective reasoning processes of the individual juror . . .' (*People* v. *Hutchinson*, [(1969) 71 Cal.2d 342] at pp. 349-350 [78 Cal.Rptr. 196, 455 P.2d 132].)" (*In re Stankewitz* (1985) 40 Cal.3d 391, 398 [220 Cal.Rptr. 382, 708 P.2d 1260]; see Evid. Code, § 1150, subd. (a).[4]) Likewise, evidence about a jury's "subjective *collective* mental process purporting to show *how* the verdict was reached" is inadmissible to impeach a jury verdict. (*Ford* v. *Bennacka* (1990) 226 Cal.App.3d 330, 336 [276 Cal.Rptr. 513], first italics added.) Thus, juror declarations are inadmissible where, as here, they "at most suggest 'deliberative error' in the jury's collective mental process—confusion, misunderstanding, and misinterpretation of the law." (*Ibid.*; accord *People* v. *Romero* (1982) 31 Cal.3d 685, 694 [183 Cal.Rptr. 663, 646 P.2d 824]; *People* v. *Hall* (1980) 108 Cal.App.3d 373, 379 [166 Cal.Rptr. 578].)

County attempts to avoid the impact of these rules by focusing on the fact that several of the jurors *communicated* their misunderstanding of the instructions during deliberations. However, "[t]he subjective quality of one juror's reasoning is not purged by the fact that another juror heard and remembers the verbalization of that reasoning." To hold otherwise would destroy the rule . . . which clearly prohibits the upsetting of a jury verdict by assailing these subjective mental processes. It would also inhibit and

---

[4]Evidence Code section 1150, subdivision (a) provides "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

restrict the free exchange of ideas during the jury's deliberations." (*People* v. *Elkins* (1981) 123 Cal.App.3d 632, 638 [176 Cal.Rptr. 729].)

*Young* v. *Brunicardi* (1986) 187 Cal.App.3d 1344 [232 Cal.Rptr. 588] relied upon by County is distinguishable. In *Young*, a retired police officer juror gave erroneous explanations of the law to the other jurors based on his prior experiences in law enforcement. The court held such statements of a juror's *outside* experiences were admissible. ■ A juror's statements in such situation are not barred because "*the very making of the statement sought to be admitted would itself constitute misconduct.* Such an act is as much an objective fact as a juror's reading of a novel during the taking of testimony [citation] or a juror's consultation with an outside attorney for advice on the law applicable to the case [citation]." (*Stankewitz, supra*, 40 Cal.3d at p. 398, italics added.)

■ Here, the jurors' statements themselves did not constitute misconduct, nor do they reflect an outside influence brought into the courtroom. Rather, the alleged misconduct arose from the way in which the jury interpreted and applied the instructions. Such evidence is inadmissible.

*Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], relied upon by County, is also inapposite. *Krouse* said juror declarations are admissible to impeach a verdict where the declarations establish "an express agreement" to violate the court's instructions "or extensive discussion evidencing an implied agreement to that effect." (*Id.* at p. 81.) The declarations here do not suggest an express or implied agreement to disregard the court's battery instruction. Rather, the jurors recited only the reasoning process of the jurors during deliberations. Such evidence is inadmissible to impeach a verdict. (See *Ferreira* v. *Quik Stop Markets, Inc.* (1983) 141 Cal.App.3d 1023, 1033-34 [190 Cal.Rptr. 778]; *People* v. *Elkins, supra*, 123 Cal.App.3d 632, 638 [finding juror affidavits inadmissible since the declarations failed to "indicat[e] . . . any open discussion or agreement among the jurors evidencing a deliberate refusal to follow the court's instructions"]; see also *Ford* v. *Bennacka, supra*, 226 Cal.App.3d at p. 336 [similarly distinguishing *Krouse*].)

The juror declarations proffered by County reflect the jurors' subjective mental processes inadmissible under Evidence Code section 1150, subdivision (a). The court therefore ruled correctly in denying County's new trial motion on this ground.

## II

## THE VERDICTS

### *The Verdicts Are Inconsistent*

██ County also asserts that even in the absence of jury misconduct it was entitled to a new trial because the jury's responses to questions 1 and 2 were contradictory. Although we agree with the latter part of County's argument, we disagree with the former.

It is clear that on the battery cause of action the jury found the sheriff made *unlawful* contact with Mesecher. In the "Use of Force" instruction, the jury was told "a detaining officer may only use such force as is reasonably necessary to effect a lawful detention. . . . However, a police officer who uses *more* force than is reasonably necessary . . . commits a battery upon the person detained as to such excessive force." (See *ante*, fn. 2; BAJI No. 7.54.) Thus, the court instructed the jury that only an officer who uses *excessive* force could be liable for a battery. The finding essential to an affirmative response to this question directly conflicts with the jury's negative response to the same question presented in question 2 pertaining to Mesecher's civil rights violation.

We reach the same conclusion on this point as Mesecher's counsel did at trial in pointing out to the court that the questions presented to the jury created the potential for an inconsistent verdict. Mesecher's counsel emphasized that the questions on the verdict form asked the "identical" question: whether the force used by Deputy Hawkins was reasonable. Consequently even though we must make every effort to interpret a verdict as consistent (see *Lowen* v. *Finnila* (1940) 15 Cal.2d 502, 504 [102 P.2d 520]), we are unable to do so here.

### WAIVER

Our conclusion the verdicts are inconsistent does not end our inquiry. We must still answer Mesecher's assertion that in light of County's trial strategy it has waived its right to assert error on this ground.

██ "Under the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal. [Citations]. Similarly an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal." (*Redevelopment Agency* v. *City of Berkeley*

(1978) 80 Cal.App.3d 158, 166 [143 Cal.Rptr. 633]; accord *Jentick* v. *Pacific Gas & Elec. Co.* (1941) 18 Cal.2d 117, 121 [114 P.2d 343]; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397].) There is nothing shocking about these rules. They are consistent with the adversary system's appreciation that lawyers in civil litigation must be given adequate breathing room to select whatever trial strategies they deem appropriate. Absent the need for the same constitutional protections afforded to defendants in criminal cases, there is considerable judicial deference to attorney creativity in civil cases. Admittedly the results of such creativity can be mixed with the lawyer and his or her client being rewarded in some cases and not in others. Nonetheless our adversary system requires that we allow counsel the right to maximize the use of his or her trial skills so that the fairness of the result will not be questioned because the court curtailed the lawyer's role.

Although this laissez faire judicial attitude towards the trial lawyer increases the probability that the outcome in most cases is correct, it also involves the risk that the lawyer's gamble may go awry with a skewed or ambiguous result. Absent unusual circumstances in spite of this risk, appellate courts generally are unwilling to second guess the tactical choices made by counsel during trial. Thus where a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error.

These principles apply with particular force in the area of jury instructions. Whereas in criminal cases a court has strong sua sponte duties to instruct the jury on a wide variety of subjects, a court in a civil case has no parallel responsibilities. A civil litigant must propose complete instructions in accordance with his or her theory of the litigation and a trial court is not "obligated to seek out theories [a party] might have advanced, or to articulate for him that which he has left unspoken." (*Finn* v. *G.D. Searle & Co.* (1984) 35 Cal.3d 691, 701-702 [200 Cal.Rptr. 870, 677 P.2d 1147]; see *Gagosian* v. *Burdick's Television & Appliances* (1967) 254 Cal.App.2d 316, 318 [62 Cal.Rptr. 70] ["there is neither reason nor justification for compelling a trial judge to act as a sort of advisory or 'backup' counsel, with all the frustration of the employed attorneys' trial strategy and tactics which such a holding could encompass."].)

We examine Mesecher's waiver argument with these considerations in mind.

■ As noted earlier Mesecher's counsel told the court that the two questions on the verdict form were directed to the *same* issue. Counsel

explained County wanted both questions on the verdict form for the sole purpose of allowing the jury to render a compromise verdict agreeing with Mesecher on her battery cause of action while rejecting her claim her civil rights were violated. In this way County could avoid liability for Mesecher's attorney fees which had the potential of amounting to a substantial sum. (See 42 U.S.C. § 1988.)[5] In its new trial motion County did not dispute Mesecher's statement that its counsel had drafted the form to allow for two different answers to the questions.

Equally significant here is the verdict form itself. Drafted jointly by the parties the verdict form makes clear that the jury was permitted to answer "yes" to *only one* of the questions. After stating both questions the verdict form provides, "If you have answered "yes" to *any of the above questions*, answer the following question [about the amount of damages] . . . " (Italics added). The phrase "any of the above questions" was a tacit invitation to the jury to answer the questions differently.

In light of its deliberate choice to avoid the gamble of an all-or-nothing verdict in favor of a compromise verdict, we hold County waived its right to assert error on the ground the ensuing verdicts were inconsistent. (See *Jentick* v. *Pacific Gas & Elec. Co.*, *supra*, 18 Cal.2d at p. 121 [upholding an inconsistent verdict on ground of invited error].)

DISPOSITION

Judgment affirmed.

Benke, J., and Nares, J., concurred.

---

[5] 42 United States Code section 1988 provides in part that "(b) In any action . . . to enforce . . . section[ ] . . . 1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."