Filed 11/6/13  Pemstein v. Pemstein CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| HAROLD PEMSTEIN, | |
| Plaintiff and Respondent, | G047107 |
| v. | (Super. Ct. No. 802823) |
| MARTIN PEMSTEIN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Reversed and remanded.

Manahan, Flashman & Brandon, Amanda E. Manahan and Jeffrey S. Flashman for Defendant and Appellant.

Harold Pemstein in pro. per., for Plaintiff and Respondent.

In this appeal, Martin Pemstein contends the trial court erred in failing to tax costs as outlined in his unopposed motion. He faults the trial court for requesting additional briefing, considering argument from the prevailing party Harold Pemstein, and awarding Harold[1] costs he was not entitled to receive. We conclude Martin's arguments lack merit, but because the trial court misinterpreted the scope of the costs award, the order must be reversed and remanded.

I

This is not the first time we have considered an appeal arising from litigation between brothers Harold and Martin. Their contentious business disputes have resulted in many lawsuits, two bankruptcies, and four appeals before this court. As aptly described by the trial court in its ruling on Martin's motion to tax costs, "The continuing saga of this complex and bitter partnership dissolution . . . hopefully concludes the final state of this 21st century '[B]leak [H]ouse.'"

We will begin by briefly summarizing the procedural and factual history leading up to Martin's motion to tax costs.[2] Harold, the minority shareholder of a small, closely held family corporation (The Pemma Corporation, hereafter Pemma), brought an action for its involuntary dissolution pursuant to Corporations Code section 1800, subdivision (b)(4) and (5). He filed a separate lawsuit to dissolve HMS Holding Company (HMS), a partnership he owned with Martin. Harold also filed a third lawsuit seeking to hold Martin and others personally liable for various tort causes of action. The defendants in each case filed cross-complaints, and in the partnership dissolution action, Pemma filed a complaint in intervention.

---

[1]     We hereafter refer to the parties by their first names for ease of reading and to avoid confusion, and not out of disrespect. (*In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1264, fn. 1.)

[2]     Because we have been provided with an abbreviated record on appeal, our discussion of the procedural history is taken from our prior opinion, *Pemstein v. Pemstein* (May 16, 2011, G043349) [nonpub. opn.], of which we take judicial notice.

2

Confronted with this tangled web of lawsuits sharing the common thread of family discord, the trial court (before a different trial judge) consolidated all the cases for trial. In 2001, that trial judge bifurcated the potentially dispositive causes of action and engaged in a piecemeal decision-making process that resulted in a bundle of obscure and confusing rulings. Both parties appealed, and this court reversed the judgments. (*Pemstein v. Pemstein* (June 9, 2004, G030217) [nonpub. opn.]; *Pemstein v. Pemstein* (June 9, 2004, G029394) [nonpub. opn.]; *Pemstein v. The Pemma Corporation* (June 9, 2004, G031227) [nonpub. opn.].) The case was remanded for a new trial and assigned to a different trial judge (Judge Peter John Polos).

In June 2005, after an 11-day trial, the trial court issued a 23-page statement of decision and judgment. It ruled HMS and Pemma must be dissolved, and each party was to "bear their own fees and costs." Judge Polos stated he wished to appoint a receiver, and he appointed an evaluator, Jaime Holmes, to determine the value of HMS. However, before the court could oversee the liquidation and dissolution process, Pemma and HMS filed for bankruptcy.

After HMS's bankruptcy case was dismissed in 2007, the case was placed back on calendar to complete the accounting. Harold asserted Martin owed him $295,871 in rent payments, plus $400,347 interest. In addition, Harold attempted to add a cause of action and requested additional damages arising from Martin's alleged breach of fiduciary duty in filing for bankruptcy.

Judge Polos held a hearing over several days beginning on September 14 and ending on November 16, 2009. In his minute order, Judge Polos noted the parties had not requested a statement of decision and he clarified the only issue remaining in the case was the equitable accounting of Harold's claim for rent owed. He stated the ruling was based on the parties' arguments and evidence presented. He determined Martin breached his duty of care to Harold in the collection of rent on behalf of HMS, and

3

awarded Harold the sum of damages requested relating to the rent issue ($295,871 principal plus $400,347 interest).

On January 5, 2010, Judge Polos entered a written judgment on the equitable accounting claim. He ordered Martin to pay Harold a total of "$696,218.03 together with interest on *this judgment* and fees and costs per postjudgment motions." (Italics added.)

Harold filed an appeal, complaining the trial court never formally ruled on his oral request to amend the complaint to allege a breach of fiduciary duty cause of action, and unfairly did not award separate damages for that claim as part of the equitable accounting. This court affirmed the judgment, concluding the record reflected the court considered and rejected the breach of fiduciary duty claim. (*Pemstein v. Pemstein, supra,* (G043349).) In affirming the judgment, we concluded that in the interests of justice both sides would bear their own costs on appeal. (*Ibid.*)

Meanwhile, while the appeal was pending, Harold filed a memorandum of costs seeking a total of $168,287.82. This sum included costs incurred at the beginning of these proceedings, not just costs relating to the equitable accounting. Specifically, Harold sought $22,375.77 for filing and motion fees (item 1 on the cost memorandum), which included costs for motions dating back to 1999. He sought $1,950 for jury fees paid in 2000 (item 2). Harold requested $24,682.29 related to deposition costs (item 4), $7,492.73, for service of process charges (item 5), and $38,327.40 for witness fees (item 8). Harold also requested $26,718.80 for court reporter fees (item 12), and $43,593.90 for "other" charges relating to arbitration, the bankruptcy trustee, and appellate court fees.

Martin filed a "motion to strike . . . memorandum of costs and/or to tax costs." (Original capitalization omitted.) Martin argued Harold was not entitled to costs incurred before 2005 because the 2005 judgment expressly stated both sides shall bear their own costs and fees. He added that costs also did not arise from the three 2004

4

appeals because the opinions also stated each party shall bear their own costs and fees. Martin asserted Harold has litigated 12 different cases in the superior court, and it appeared the fees related to some of those other lawsuits. Martin alleged any request for costs arising from the 2005 lawsuit should be shared by the other defendants of those actions. And finally, Martin asserted the request for costs arising out of earlier litigation was untimely.

Martin also provided specific arguments as to different items on the costs bill. As to item 2, jury fees, Martin noted the equitable accounting judgment was reached following a three-day court trial and no jury was seated. He stated there was only one deposition cost (item 4) related to the equitable accounting action and he should not have to pay for Dana Sherman's deposition. Martin argued item 5, the service of process fees, and item 8, witness fees, were unnecessary and unreasonable to the instant action.

On April 2, 2010, Harold opposed the motion to strike and/or motion to tax costs. Harold argued the motion to tax costs was untimely because it was filed more than 10 days after the memorandum of costs was served. Harold concluded the court lacked jurisdiction to grant Martin any relief. Harold did not address any of the substantive issues raised in the motion to tax costs.

A few weeks later, the court held a hearing on the motion to tax costs. The court indicated the motion to tax was timely and was an unopposed motion. Harold attempted orally to make substantive arguments in opposition to the motion to tax costs. The court granted Martin's counsel's objection to these arguments. Harold's counsel then argued that although the motion was unopposed, the court still had an independent duty to determine if the costs were unnecessary or unreasonable. The court asked the parties to brief whether the court had a duty to independently consider whether the costs were necessary and reasonable. Martin's counsel clarified briefing would be on this limited issue, and not the substantive issues Harold wanted to untimely assert. The court agreed. It issued a minute order denying the motion to strike "for failure to state a basis

5

for striking the entire cost bill." It *granted* the motion to tax "for lack of opposition on the merits" and stated it would "allow [the] parties to submit points and authorities to adjudicate amounts to be taxed."

On April 23, 2010, Harold filed a supplemental brief stating the court requested additional briefing on whether Martin's motion to tax costs "sustains its burden of proof to challenge the reasonableness and necessity of costs claimed." Harold argued Martin did not meet his burden. In addition, Harold objected to Sherman's declaration supporting the motion to tax costs on the grounds he was previously disqualified to represent Martin in the lawsuit and ordered not to participate in the case. He filed a separate motion objecting to Sherman's supporting declaration.

Although the documents are not contained in our record, Martin contends in his opening brief and Harold does not dispute, the proceedings were delayed for two years because Martin filed for protection under the bankruptcy code and other "irrelevant procedural maneuvering[s]."

On January 26, 2012, Harold filed an "ex parte application for [an] order awarding costs to [the] prevailing [party] or alternatively for an order setting [a] hearing on [the] motion to tax costs. (Original capitalization omitted.) Harold explained he was making the application because he had "obtained relief from the bankruptcy stay for the purpose of obtaining an award of costs on [his] $750,000 judgment in this action." Harold noted the judgment was "in excess of $750,000" based on Judge Polos's ruling on the equitable accounting claim. His attorney declared Judge Polos ruled he would "entertain further briefing on the question of how much of individual items the court should tax." The matter was assigned to Judge Luis A. Rodriguez.

The following day, Judge Rodriguez held a hearing on the ex parte application. Martin's counsel stated the court was without jurisdiction to rule on the matter because the case was dismissed in November 2010. In addition, Martin told the court he filed for bankruptcy before he could file supplemental briefing about costs as

requested by the court. Harold moved to vacate dismissal of the case to permit the court to again consider the issue of costs. The court agreed and told the parties it would "incorporate the prior paperwork and allow both parties to submit supplemental briefings." The parties submitted the matter on the briefing and agreed with Judge Rodriguez that a hearing was unnecessary.

On May 4, 2012, the trial court ruled the motion to tax costs was granted in part and denied in part. It awarded a total sum of "$107,292.56 as cost[s] to the prevailing party . . . Harold . . . and against . . . Martin . . . ." (Italics omitted.) The court overruled the objection to Sherman's declaration.

The trial court reasoned Martin's motion to tax was timely, stating, "Contrary to the stance taken by [Harold] even a cursory review of the record discloses that the costs that are claimed in its [m]emorandum of [c]osts . . . are as characterized by [Martin] are post trial cost[s] not post judgment cost[s]." Citing California Rules of Court, rule 3.1700, the trial court concluded Martin had 15 days after service of the costs bill, which was extended five days because the service was by mail. Due to a court holiday on February 15, the court calculated the motion to tax costs filed on February 16 was timely.

Turning to the substantive issues raised in the motion to tax costs, Judge Rodriguez determined trial costs would include costs incurred before 2005. He rejected Martin's argument costs prior to 2005 should be disregarded, explaining, "[Martin] clings to Judge Polos's ruling in 2005 [that] '[e]ach [p]arty to bear their own cost.' [Martin's] point would be correct if the litigation as Judge Polos had anticipated would have stopped there but it didn't."

To support this conclusion, Judge Rodriguez stated our prior appellate opinion affirming Judge Polos's January 5, 2010 judgment was "instructive." However, Judge Rodriguez did not cite to our analysis but rather to our inclusion of Judge Polos's minute order. It is unclear why Judge Rodriguez did not simply refer directly to the

7

superior court file. In any event, as described above, Judge Polos's minute order clarified his task was to resolve the one remaining issue in the case and he noted the other issues had been resolved in "'prior partial rulings after the first trial to this judge and the subsequent bankruptcy[.]'"

Judge Rodriguez interpreted the minute order as undermining Martin's argument "that Judge Polos's cost share order excludes all costs incurred prior to 2010 since discovery was not reopened and the parties were excused [from] presenting evidence already adduced in the 2005 trial. First no legal or factual basis is cited to this court that this trial ended in 2005. On the contrary[,] both the trial and appellate record conclusively demonstrate as cited above that the 2010 judgment of Judge Polos finding [Harold] the prevailing party, who is entitled to award of fees and cost[s] is the final ruling from which any tax is to be imposed on [Harold's] cost[s] bill."

Citing Code of Civil Procedure section 1032,[3] and two cases *Ladas v. California State Auto Assoc.* (1993) 19 Cal.App.4th 761 and *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, the trial court awarded costs "after allocating the burdens of each party in this long and drawn out litigation showing that they were or were not 'reasonable and necessary'"

Specifically, as to item 1, Harold sought $22,375.77 for filing and motion fees and the court reduced this amount and awarded $10,026.34. The court stated it taxed the appellate filings and fees as well as attorney fees relating to Ronald Bye and Richard Duncan. The court did not tax any of the other itemized costs, awarding: (1) $1,950 for jury fees; (2) $24,682.29 for deposition costs; (3) $7,492.73 for service of process charges; (4) $38,327.40 for witness fees; (5) $26,718.80 for court reporter fees; and (6) $43,593.90 for "other" charges.

_____

[3]    All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

II

Martin's first contention on appeal is that "the trial court should have treated the motion [to tax costs] as unopposed." (Original capitalization omitted.) He argues because Harold's opposition to the motion to tax was based entirely on procedural timing defects, the court abused its discretion in (1) allowing further briefing, and (2) not taxing costs requested in the unopposed motion. It is Martin's theory the court lacked authority to independently review the costs or reject the objections raised in his unopposed motion to tax. We conclude Martin misconstrues the record and the court's level of discretion and authority in considering costs and motions to tax. However, we agree the matter must be reversed and remanded because the court ignored Judge Polos's 2005 costs share order and misconstrued the final judgment by awarding costs beyond those reasonable and necessary for Harold as the prevailing party in only the 2009-2010 equitable accounting action.

We begin by noting the briefing on appeal utterly failed to provide this court with an adequate account of what occurred below, and we have done our best to piece together the events based on the limited record before us. Based on our independent review, we can say with certainty that contrary to Martin's contention, Judge Polos treated the motion to tax costs as unopposed. He stated several times at the hearing that the motion was unopposed. Judge Polos also advised Harold's counsel he could not raise substantive issues for the first time at the hearing. The minute order granted the motion to tax costs "for lack of opposition on the merits."

Martin's assertion Judge Polos erroneously allowed supplemental briefing on the substantive issues is also simply untrue. The record reflects Judge Polos requested briefing on the limited issue of whether a trial court must "separately" adjudicate the amounts that are requested to be taxed "under the criteria of unreasonable or unnecessary" when the motion to tax is unopposed. Consequently, up to this point in the proceedings, we find no evidence the court abused its discretion.

9

What transpired next in the case was a procedural nightmare. First, Harold essentially ignored the trial court's order and filed a supplemental brief that looked very much like a typical substantive opposition to a motion to tax costs. Martin did not file briefing and instead declared bankruptcy, delaying the proceedings for two years during which the underlying action was dismissed. Harold's 2012 ex parte application requesting costs as the prevailing party did not adequately disclose the status of Martin's motion to tax costs. And after Judge Rodriguez was assigned to the case, Harold represented to the court that the motion to tax costs required supplemental briefing. Surprisingly, Martin apparently agreed with this plan and submitted the issue to the court without the benefit of a hearing.

We found nothing in the record before us suggesting either party informed the court the motion to tax costs was granted as unopposed, or that Judge Polos's order permitting supplemental briefing was not intended to reopen argument on the substantive issues. To the contrary, it appears the parties agreed to submit the issue based on additional briefing and without the benefit of a further hearing. To the extent Judge Rodriguez should not have considered supplemental briefing or should have treated the motion to tax costs as unopposed, any error was waived by the parties' conduct. (See *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685-1686.) "'Under the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal. [Citations.]" (*Ibid.*)

However, this conclusion is a hollow victory for Harold. We conclude Judge Rodriguez misconstrued the nature of the two judgments filed in this case by Judge Polos and the holding of our prior opinion in *Pemstein v. Pemstein, supra,* (G043349), discussing those judgments.

The procedural history of this case is somewhat complex but must be understood to appreciate the nature and significance of the 2005 judgment and the

10

2010 judgment. As noted above, in the late 1990s, after Harold's three lawsuits were consolidated, the trial judge decided that rather than holding one massive trial, it would be more efficient to bifurcate and try the issues separately. The case was partially tried by a jury, and partially tried by the court, and from these judgments the parties filed three separate notices of appeal.

As described in *Pemstein v. The Pemma Corporation supra,* G031227, the trial court's strategy "resulted in the equivalent of a Gordian knot. The piecemeal decision-making process resulted in an inextricably related bundle of obscure and confusing rulings, which leave this court unable to conclude with any confidence that the parties all received a full and fair hearing on the issues." (*Ibid.*) We directed the trial court to conduct a more conventional proceedings "culminating in an equitable final order as to all causes of action in all the consolidated cases."

Judge Polos (the fourth trial judge to have presided over the matter) skillfully undertook the monumental task of trying all the causes of action raised in the three lawsuits. After an 11-day court trial, Judge Polos prepared a 23-page statement of decision and judgment on June 30, 2005, stating he had visited Pemma's facility in Santa Ana, considered the trial briefs, and evaluated the oral and documentary evidence. The court began its statement of decision by clarifying, "Pursuant to [a]ppellate [c]ourt direction, this [s]tatement of [d]ecision is *a final equitable order* as to all the proceedings and all causes of action in these consolidated proceedings." (Italics added.)

Judge Polos recounted the long and complex procedural history and underlying facts of the case. He found Harold and Martin were credible witnesses, and their uncle Sherman, "to be the driving force behind this prolonged litigation." Judge Polos rendered a decision as to all three lawsuits, ordering the dissolution of Pemma and HMS. In his concluding remarks, Judge Polos recognized "the drastic nature in ordering the corporate dissolution, especially after the [c]ourt's visit to the Santa Ana premises . . . . The [c]ourt further understands the needs of Pemma to continue to lease

11

its current space from HMS . . . in order to efficiently operate. [¶] For this reason, this [c]ourt *strongly advises* an agreement be reached between the parties before the appointment of a receiver is made to liquidate [Pemma] and sell the HMS properties."

Judge Polos scheduled a hearing date for the appointment of a receiver, and he requested a copy of the report prepared by the appointed expert as to the value of HMS. He stated this information would be helpful in any potential buy-out, resolution, or dissolution. The final section of the statement of decision contains the "judgment." It orders the corporation and partnership be dissolved and "[e]ach party to bear their own fees and costs" (hereafter referred to as the 2005 judgment).

Due to bankruptcies and legal maneuvering, Judge Polos did not see the case again until four years later in 2009. Many of the issues relating to the dissolution and liquidation were resolved in the bankruptcy court. Judge Polos held a three-day court trial to complete the last accounting issue. Indeed, he issued a minute order clarifying, "The only issue remaining as to all of the consolidated cases the equitable satisfaction" of Harold's claim for rents owed by HMS. Judge Polos issued a judgment on January 5, 2010, awarding rents owed plus interest "on this judgment and fees and costs per postjudgment motions" (hereafter referred to as the 2010 judgment).

We conclude the 2005 judgment was final as to all the causes of action raised in the consolidated action. By ordering each party to bear their own costs, we can infer the court determined there was no prevailing party and equity did not require a costs award relating to the litigation of *those claims*.

We recognize this was an interlocutory judgment that was not immediately appealable. (*Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 966 [orders dissolving partnerships are not appealable final judgments].) Further judicial action was required. Indeed, Judge Polos appointed a receiver, ordered an accounting of Pemma's and HMS's assets, and requested a copy of the expert's report on the value of HMS. (See 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 15, pp. 558-560 [judgment's reference to a

12

master or referee makes judgment interlocutory].)  The court's orders clearly contemplated further action in the trial court before a final judgment would be prepared. Although not stated in the 2005 interlocutory judgment, the court retained jurisdiction to confirm any sale of assets by the receiver and approve the receiver's final accounting. (§ 565; 6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies, §§ 438, 455, 458, pp. 370-371, 386, 387-389.)

Although the 2005 judgment was interlocutory, the court's order designating each side must bear their own costs cannot be ignored or forgotten.  In 2004, this court ordered Judge Polos to render a final *equitable* order as to all proceedings.  As a matter of equity, the trial court made its ruling, determining there was no prevailing party as to those decided issues.  The court's subsequent final judgment resolving the remaining accounting issues must be viewed in this unique context.  Harold was certainly the prevailing party with respect to the accounting dispute, and should be awarded costs relating to the accounting litigation.  However, he was never deemed the prevailing party as to the underlying litigation, and he was not entitled to those costs.[4]

For this reason we must reverse the court's order awarding costs.  The award includes costs (such as jury fees) dating back to the original piecemeal litigation that resulted in several judgments all reversed by this court in 2004.  The award also includes costs relating to the 11-day court trial before Judge Polos resulting in the

---

[4]        In awarding costs, Judge Rodriguez referred to our opinion in *Pemstein v. Pemstein, supra,* G043349, as supporting the conclusion Harold was entitled to recover costs relating back to the underlying litigation.  Our opinion certainly referred to the 2005 judgment ordering dissolution of Pemma and HMS and we acknowledged it was not the end of the litigation between these parties.  However, our opinion simply affirmed Judge Polos's final judgment resolving the last remaining accounting issue.  Nothing in our opinion suggested this judgment rendered Harold the prevailing party in the entire litigation entitled to costs incurred before the 2005 judgment.  As noted above, such a holding would be contrary to Judge Polos's conclusion in 2005 that equity required the parties share the costs relating to resolution of the underlying lawsuits.  The 2010 judgment determined Harold was the prevailing party only on the accounting dispute.

13

2005 interlocutory judgment dissolving the brothers' corporation and partnership, and ruling both sides shall bear their own costs.

We remand the matter to allow the trial court to reconsider Martin's unopposed motion to tax costs. Contrary to Martin's contention on appeal, the trial court is not required to blindly accept the arguments raised in the motion to tax costs. Section 1033.5 sets forth the possible items that are and are not allowable costs. And it is well settled, "'The trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision.' [Citation.] To the extent the statute grants the court discretion in allowing or denying costs or in determining amounts, we reverse only if there has been a '"clear abuse of discretion" and a "miscarriage of justice."' [Citations.]" (*Chaaban v. Wet Seal, Inc*. (2012) 203 Cal.App.4th 49, 52 [court has discretion to deny motion to tax costs].) Pursuant to Judge Polos's 2010 judgment, Harold is only entitled to recover as the prevailing party costs reasonably related and necessary for the equitable accounting action.

### III

The postjudgment order is reversed and remanded. In the interests of justice, each side shall bear their own costs in this appeal.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

BEDSWORTH, J.
c

14