Filed 2/15/22; pub. & mod. order 3/14/22 (see attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TYSON RAMSDEN,<br><br>  Appellant,<br><br>v.<br><br>SADYE POWELL PETERSON,<br><br>  Respondent. | 2d Civil No. B310832<br>(Super. Ct. No. 16FL03195)<br>(Santa Barbara County) |

Tyson Ramsden appeals from the order granting Sadye Powell Peterson's request to move their daughter, H.P., from California to Illinois. Ramsden contends: (1) the trial court should not have allowed counsel for H.P. to make custody and visitation recommendations, (2) the court erred when it permitted H.P.'s counsel to introduce hearsay evidence, (3) the court applied the wrong standard when granting Powell's request, and (4) the evidence was insufficient to support the order. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Powell gave birth to H.P. in 2012. In 2016, Powell requested an order from the trial court that would permit her to

move to Arkansas with H.P. The court denied the request, but did grant Powell primary physical custody of H.P.

The following year, Powell requested an order permitting her to move with H.P. to Oklahoma, where her new husband was stationed. The trial court denied the request, and Powell elected to remain in California.

In May 2020, Ramsden's then-girlfriend, S.S., called Powell and said that Ramsden had assaulted her. H.P. saw the assault, was afraid of her father, and wanted Powell to pick her up. S.S. also said that Ramsden had recently driven while intoxicated and hit a parked car while H.P. was in the vehicle.

Powell filed an emergency request to take exclusive custody of H.P. The trial court denied the request and extended the existing visitation schedule. The court said that if Child Welfare Services (CWS) issued a safety plan, that plan should be followed pending a hearing later that month.

At the hearing on the custody request, Ramsden and Powell stipulated that counsel should be appointed for H.P. They agreed that H.P.'s counsel should review the CWS plan and "come back . . . with a recommendation."

A few weeks later, H.P.'s appointed counsel told the trial court that H.P. "loves [Ramsden] dearly but . . . does not feel comfortable going [to his residence] during the week." She asked the court to change the existing custody arrangement so that Ramsden would have custody of his daughter on alternating weekends. Ramsden did not object to such an interim custody order—one lasting "two weeks, or four weeks, or six weeks"—to get H.P. "stabilized" again.

Powell subsequently filed another move-away request. At a February 2021 hearing on the request, the parties

2

stipulated that the trial court could take judicial notice of the entire case file, which had been reviewed by counsel for H.P. and included the CWS records. Ramsden later attempted to revoke his stipulation, objecting that the CWS files lacked foundation and contained hearsay. The court overruled Ramsden's objection.

Ramsden also sought to disallow counsel for H.P. from making visitation and custody recommendations. Powell replied that such an objection was untimely since Ramsden had previously stipulated that counsel could make such recommendations. The trial court agreed and denied Ramsden's motion.

When the hearing continued, Powell testified about the time S.S. asked her to pick up H.P. She said that H.P. was crying during their entire drive home. The next day, Ramsden called Powell and admitted that he had driven while intoxicated with H.P. in the car. H.P. knew that her father was intoxicated, and did not want to return to his house for several weeks.

Powell said that she had been married for more than three years and wanted to live with her husband and H.P. in Illinois. She said that Ramsden previously agreed to let H.P. live with Powell in Oklahoma if she would allow H.P. to visit him when he moved to Alabama. Ramsden revoked that agreement when he and S.S. broke up after the May 2020 incident.

During his testimony, Ramsden admitted that he drank alcohol and hit a curb while driving with H.P. in the car in May 2020, but denied that he was drunk. Ramsden also admitted that he and S.S. had verbal and physical altercations in front of H.P., which he could tell made her uncomfortable.

At the conclusion of the hearing, the trial court concluded that circumstances had changed sufficiently to permit

3

granting Powell's move-away request. The court also said that it could grant the request under a best-interest-of-the-child standard. Either way, the court did not place great weight on the May 2020 incident. Rather, when it denied Powell's previous requests, her relationship with her husband was relatively new, and there was some concern over whether it would continue. That relationship had grown stronger over the ensuing three years, and H.P. was increasingly bonded to her stepfather. In contrast, H.P. had been attached to S.S., but she and Ramsden had ended their relationship. H.P.'s best interests would thus be best served by moving to Illinois with Powell. The court granted Powell's move-away request.

## DISCUSSION

*Custody and visitation recommendations*

Ramsden first contends the trial court erred when it permitted counsel for H.P. to make custody and visitation recommendations. But when the court appointed counsel, Ramsden stipulated that she could review the CWS plan and "come back . . . with a recommendation" regarding the interests of his daughter. The contention is waived. (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1687 [party cannot claim error on appeal based on action it affirmatively approved].)

Even if it weren't, there was no error. Upon determining that it would be in the best interest of a child, a trial court "may appoint private counsel to represent the interests of the child in a custody or visitation proceeding." (Fam. Code,[1] § 3150, subd. (a).) Once appointed, "counsel is to gather evidence that bears on the best interests of the child, and present that admissible evidence to the court in any manner appropriate for

---

[1] Statutory references are to the Family Code.

4

the counsel of a party." (§ 3151, subd. (a).) Counsel may also "introduce and examine [their] own witnesses, *present arguments to the court concerning the child's welfare*, and participate further in the proceeding to the degree necessary to represent the child adequately." (*Id.*, subd. (b), italics added.) This includes "filing pleadings, making evidentiary objections, and *presenting evidence and being heard in the proceeding*." (*Id.*, subd. (c)(4), italics added.) These provisions make clear that counsel for H.P. properly advocated for her client during the proceedings below. That the parties alternatively called counsel's advocacy a "recommendation" or "position" or "argument" is a semantical distinction with no substantive significance.

Ramsden makes a number of additional attacks on the role of H.P.'s counsel, arguing primarily that she acted as an expert appointed pursuant to Evidence Code section 730 and that she could have been called as a witness subject to cross-examination. We reject these arguments because counsel did not testify as an expert and was not called as a witness. The Family Code permitted counsel to determine what was in H.P.'s best interest and make that position known to the trial court.

*Reliance on hearsay*

Citing *People v. Sanchez* (2016) 63 Cal.4th 665, Ramsden next contends the trial court erred when it permitted counsel for H.P. to introduce hearsay evidence. But this contention presumes that H.P.'s counsel testified at the hearing on Powell's move-away request, a presumption Ramsden does not support with evidence or analysis. (Cf. *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 [appellate court may disregard arguments not supported by legal authority or analysis].) In any event, Ramsden has not shown that he was

5

prejudiced. "[N]o error warrants reversal unless the appellant . . . show[s] injury from the error. [Citation.]" (*Id.* at p. 286; see also *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 [California Constitution prohibits appellate court from reversing judgment unless error is prejudicial].)

*The move-away request*

Next, Ramsden contends the trial court erred when it granted Powell's move-away request under a "best interests of the child" standard rather than the "changed circumstances" standard. This contention is based on a misunderstanding of Family Code requirements.

The Family Code requires a trial court to make custody determinations based on the best interests of the child. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256.) Once that custody determination has been made, the party seeking to modify it "can do so only if [they] demonstrate[] a significant change of circumstances justifying a modification." (*Ibid.*) "*The changed-circumstance rule is not a different test*, devised to supplant the statutory test, but an adjunct to the best-interest test." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535, italics added.) "It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question." (*Ibid.*) "Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest." (*Ibid.*)

The court below applied the proper standards. In its decision, the court noted that its overarching duty was to make a determination that was in H.P.'s best interests. It also noted that

6

circumstances had changed so significantly that a new arrangement—permitting H.P. to move with her mother to Illinois—was in H.P.'s best interests.

And the evidence supports those determinations. When examining a child custody determination, our review is limited to determining whether the trial court abused its discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) We will find no abuse of discretion if substantial evidence shows that the "court could have reasonably concluded" that granting Powell's move-away request "advanced the 'best interest'" of H.P. (*Ibid*.; see also *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 796 [abuse of discretion shown if custody determination not supported by substantial evidence].)

Here, Ramsden argues "there was no evidence that there had been any significant change in circumstances, except the passage of time." But this ignores the evidence and the trial court's findings that Powell's relationship with her husband had grown stronger during their three-plus years of marriage. It ignores that H.P.'s bond with her stepfather had also grown stronger. And it ignores that H.P.'s relationship with Ramsden had weakened—something he tacitly admits by acknowledging that she was having difficulties with him and did not want to spend as much time at his house. Substantial evidence thus supports the trial court's determination that circumstances had changed so significantly that granting Powell's move-away request was in H.P.'s best interest.

## DISPOSITION

The order granting Sadye Powell Peterson's move-away request, entered February 8, 2021, is affirmed. Powell shall recover her costs on appeal.


TANGEMAN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Filed 3/14/22 (pub. & mod. order)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TYSON RAMSDEN, | 2d Civil No. B310832 |
| | (Super. Ct. No. 16FL03195) |
| Appellant, | (Santa Barbara County) |
| | |
| v. | ORDER MODIFYING |
| | OPINION AND CERTIFYING |
| SADYE POWELL PETERSON, | OPINION FOR PUBLICATION |
| | [NO CHANGE IN |
| Respondent. | JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 15, 2022, be modified as follows:

1. On page 1, the following paragraph is inserted as the first paragraph in the opinion:

The Family Code authorizes courts to appoint private counsel to represent the interests of children in custody and visitation proceedings. (Fam. Code,[2] § 3150, subd. (a).) Although the Code expressly allows the child's

_____

[2] Undesignated statutory references are to the Family Code.

counsel to call witnesses and present arguments to the court, there are divergent views on whether court-appointed counsel may make "recommendations" in custody and visitation cases. Here, we conclude that the Family Code permits minor's counsel to make recommendations to the trial court regarding custody, visitation, and other issues relevant to their client's interests.

2. At the last paragraph on page 4, footnote 1 is deleted from the parenthetical citation following the second sentence ending "in a custody or visitation proceeding" and the citation is modified to read as follows:

(§ 3150, subd. (a).)

The opinion in the above-entitled matter filed on February 15, 2022, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in judgment.

_____

GILBERT, P. J.          YEGAN, J.          TANGEMAN, J.

2

Timothy J. Staffel, Judge

Superior Court County of Santa Barbara

_____

Law Office of M. Jude Egan and M. Jude Egan  for Appellant.

Comstock & Wagner and Stephen A. Wagner for Respondent.