Filed 8/23/22  Pulliam v. University of Southern California CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CAROL PULLIAM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA,<br><br>    Defendant and Respondent. | B304749<br><br>(Los Angeles County Super. Ct. No. BC654563) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Affirmed.

Carol Pulliam, in pro. per.; Law Offices of Wole Akinyemi and Wole Akinyemi, for Plaintiff and Appellant.  [*Retained*.]

Horvitz & Levy, Bradley S. Pauley, Mark A. Kressel, Lacey L. Estudillo; Peterson Bradford Burkwitz, Avi A. Burkwitz and Gil Y. Burkwitz, for Defendant and Respondent.

_____

Plaintiff and appellant Carol Pulliam (Pulliam) appeals from a judgment entered in favor of defendant and respondent University of Southern California (USC)[1] following a jury trial on Pulliam's claims of wrongful termination in violation of public policy and intentional interference with an employment contract.

Because Pulliam has not met her burden on appeal, we affirm.

## BACKGROUND

I. *Facts*[2]

A. <u>Pulliam's employment by MSS Nurses Registry; assignment to USC Verdugo Hills Hospital</u>

Pulliam was employed as a nurse by MSS Nurses Registry (MSS), which sent her to work at various hospitals.  In October 2015, MSS assigned Pulliam to work at USC Verdugo Hills Hospital (the hospital) on an as-needed basis.  Between October 2015 and January 2016, Pulliam worked approximately 40 shifts at the hospital.

B. <u>Missing medication</u>

In January 2016, a routine weekly medication audit at the hospital revealed that a tablet of tramadol, a controlled pain medication, was missing from a Pyxis machine, a secured unit containing medications.  Pyxis records indicated that Pulliam was potentially involved in the medication discrepancy.

---

[1]     USC was sued erroneously as USC Verdugo Hills Hospital.

[2]     As Pulliam does not challenge the sufficiency of the evidence, we state the underlying facts adduced at trial only briefly in the light most favorable to the judgment.  (See *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272, fn. 2.)

The hospital's clinical director, Raffi Boghossian (Boghossian), called MSS to speak with Pulliam about the discrepancy. Boghossian left a message but did not receive a call back. He approached Pulliam during her next shift at the hospital. Pulliam claimed that "she didn't do anything wrong, and [that] she was busy." When Boghossian approached Pulliam again to "provide[] her an opportunity . . . to explain herself[,]" Pulliam said, "'I didn't do anything wrong. This report is wrong. This is wrong[.]'" Pulliam refused to speak with Boghossian further and walked away.

Boghossian spoke to his supervisor about the incident. Given concerns "that she may not be safe with . . . patients[,]" they agreed that Pulliam should not return to work at the hospital.

### C. Do-not-send designation

Boghossian sent a personnel evaluation form to MSS stating that Pulliam accessed controlled medication which was not administered to a patient. He stated that Pulliam "'was provided with the opportunity to explain the situation but did not cooperate.'" Boghossian requested that MSS not send Pulliam to any department at the hospital.

Asked by MSS to respond to the medication discrepancy, Pulliam wrote that other nurses had miscounted the medication. She believed that it "was a set up[.]"

## II. *Procedural History*

### A. Pretrial proceedings

In March 2017, Pulliam filed a complaint in the Los Angeles County Superior Court, alleging causes of action

against USC and MSS.[3]  A month later, USC removed the case to the United States District Court for the Central District of California based on federal question jurisdiction.  (28 U.S.C. §§ 1331, 1441(a).)

Pulliam filed the operative first amended complaint in federal court.  She asserted causes of action for race discrimination, libel, and slander (against both USC and MSS); wrongful termination in violation of public policy and intentional interference with an employment contract (against USC only); and failure to prevent discrimination (against MSS only).

In April 2018, the federal district court granted summary adjudication in favor of USC and MSS as to Pulliam's race discrimination claim under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and remanded the remaining claims to state court.

Following remand, the trial court granted MSS's motion for summary judgment.  In January 2019, the court granted USC summary adjudication as to the causes of action for race discrimination under the Fair Housing and Employment Act, libel, and slander.

B.  Trial

The case proceeded to a jury trial on two causes of action against USC—wrongful termination in violation of public policy and intentional interference with an employment contract.

The jury began its deliberations at 2:46 p.m. on December 11, 2019.  The trial judge, Judge Elaine Lu, informed counsel that she planned to leave the courthouse early that afternoon to attend a youth outreach program.  She explained that she had arranged for another judge to cover for her in the

---

[3]     MSS is not a party to this appeal.

4

event that the jury reached a verdict or to help with any questions. She would also be available on her cell phone. In response, Pulliam's counsel replied, "That's great."

Before leaving, Judge Lu asked counsel to review the jury instructions and verdict form and to redact confidential information from the admitted trial exhibits. The redactions were completed at approximately 3:40 p.m. After final approval by counsel, the jury instructions, verdict, and exhibits were given to the jury. At 4:05 p.m., the jury indicated that it had reached a verdict. Another judge presided as the verdict was read. The jury unanimously found in favor of USC on both causes of action.

On January 6, 2020, the trial court entered judgment in favor of USC.

C. Ex parte applications for juror information

In January 2020, Pulliam, proceeding in propria persona, sought ex parte "an order unsealing juror identifying information" under Code of Civil Procedure section 237, subdivision (b).[4] She requested the disclosure of the jurors' identities and contact information so that she could obtain affidavits from them regarding their deliberative process.[5] She argued that the information was necessary for her to prove jury misconduct in a motion for a new trial. In support, Pulliam submitted her own declaration, as well as a declaration from her

_____

[4]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[5]    Pulliam filed three separate ex parte applications in January 2020, seeking the release of juror information. Because each sought the same information and each was denied based on a lack of a prima facie showing of good cause, we describe the last, most comprehensive, application and denial.

former counsel who represented her at trial, Wole Akinyemi (Akinyemi).

Akinyemi stated in his declaration that, on December 11, 2019, it took him and defense counsel approximately 34 minutes to redact over 2,000 pages of exhibits. The evidence binders, jury instructions, and verdict form were delivered to the jurors a few minutes before 4:00 p.m., and "shortly thereafter" the jury indicated that it had reached a verdict. Akinyemi "was totally stunned and shocked" that a verdict had been reached. He opined: "Clearly, the jurors did not review the evidence books and neither did they actually read the 22-page jury instructions that accompanied the evidence books because they reached their decision within five minutes after these documents were delivered to them by the courtroom assistant." After the jury was dismissed, Akinyemi spoke to jurors, who told him that they had concluded that Pulliam was not a USC employee, and, therefore, they did not review other evidence or the jury instructions.[6]

In denying Pulliam's request, the trial court concluded that Pulliam had failed to make a prima facie showing of good cause for the disclosure. The court explained that Pulliam had not "identif[ied] any information that may be gathered from jurors to support any claim of juror misconduct" and that the evidence she had submitted was "insufficient to suggest that any juror engaged in misconduct." The court found "no indication that the

---

[6]     In her declaration, Pulliam recounted what Akinyemi had told her about his conversations with jurors. The trial court sustained its own objections to Pulliam's declaration for lack of foundation and on hearsay grounds and noted that Pulliam's "characterization of what her former attorney . . . discussed with the jurors varie[d] significantly from Akinyemi's own declaration."

jurors, having been read the jury instructions in open court and having listened to the presentation of evidence throughout the trial, were not properly deliberating during the entire 'roughly 34 minutes or so' that [c]ounsel spent redacting the exhibit binders." The court also found that "Akinyemi's assertion that the jurors focused their attention on one particular area of evidentiary weakness in [Pulliam]'s case—the lack of evidence to show that [Pulliam] was an employee of USC—improperly delve[d] into the thought process of the jurors." Even if Pulliam were to uncover evidence from the jurors supporting Akinyemi's assertion, the evidence would "be immaterial and inadmissible."

D. <u>Motion for new trial</u>

On January 31, 2020, Pulliam moved for a new trial under section 657 on the grounds of irregularity in the proceedings, jury misconduct, accident or surprise, newly discovered evidence, and error in law.[7] In support, Pulliam submitted her own declaration, stating that the jury began deliberating without the evidence books and, once the redacted books were delivered to them, returned a verdict only 26 minutes later. With her reply, she submitted the same declaration of her former counsel that had been previously filed in connection with her request for juror information.

On February 26, 2020, the trial court denied Pulliam's new trial motion. The court noted that Pulliam's declaration was not properly certified under penalty of perjury as required by

---

[7]     Pulliam's motion included the legal standard for a motion for judgment notwithstanding the verdict, but it offered no argument as to why Pulliam was entitled to it. The trial court later denied Pulliam's request for judgment notwithstanding the verdict on this basis.

section 2015.5, and that her former counsel's declaration was offered for the first time in her reply. As relevant here, the court rejected the contention that the jury failed to properly deliberate, citing a lack of admissible evidence to support the claim, as well as Pulliam's failure to show resulting prejudice.

E. <u>Appeal</u>

On March 4, 2020, Pulliam timely appealed from the judgment.

F. <u>Recusal of trial judge</u>

On August 3, 2020, Judge Lu recused herself from the case because "[a] close friend . . . was appointed as General Counsel of [USC] in or around June of 2020." On August 6, 2020, the case was reassigned to another judge for all further proceedings.

## DISCUSSION

An appellate court presumes that the judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We adopt all intendments and inferences to affirm the judgment unless the record expressly contradicts them. (*Ibid.*) An appellant has the burden of overcoming the presumption of correctness, and we decline to consider issues raised in an opening brief that are not properly presented or sufficiently developed to be cognizable. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 (*Turner*), abrogated in part on other grounds by *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).) "It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Benach, supra*, 149 Cal.App.4th at p. 852.) A litigant's election to act in propria persona on appeal does not entitle her to leniency as to the rules of practice and

procedure.[8]  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.)

With that in mind, we discuss the following arguments made by Pulliam that "are sufficiently developed to be cognizable" (*Turner, supra*, 8 Cal.4th at p. 214, fn. 19):  (1)  The trial court erred by denying Pulliam's ex parte applications to disclose juror information; (2) the court erred by denying Pulliam's new trial motion based on juror misconduct and surprise; (3) the court failed to properly instruct the jury regarding deposition testimony read during trial; (4) the court erred by granting MSS's motion for summary judgment; and (5) all of the court's orders are void because the trial judge was disqualified when she made them.  "To the extent [Pulliam] perfunctorily asserts other claims, without development and, indeed, without a clear indication that they are intended to be discrete contentions, they are not properly made, and are rejected on that basis." (*Turner, supra*, at p. 214, fn. 19.)

I. *Denial of Ex Parte Applications to Disclose Juror Information*

A. <u>Relevant law</u>

"[S]ection 237 requires that a petition seeking juror contact information 'shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information.'  [Citation.]  Good cause includes a showing that the party seeking disclosure has made a

---

[8]      Pulliam filed her appellate briefs in propria persona but was represented by counsel at oral argument.  We only consider issues raised in Pulliam's briefs; "[w]e do not consider arguments that are raised for the first time at oral argument.  [Citation.]" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9.)

diligent effort to contact the jurors through other means. [Citations.]" (*Eng v. Brown* (2018) 21 Cal.App.5th 675, 710 (*Eng*).) Good cause also "requires 'a sufficient showing to support a reasonable belief that jury misconduct occurred . . . .' [Citations.] Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported. [Citation.]" (*People v. Cook* (2015) 236 Cal.App.4th 341, 345–346.)

B. Standard of review

We review the denial of a request for disclosure of juror information under the abuse of discretion standard. (*Eng, supra*, 21 Cal.App.5th at p. 710.)

C. Analysis

Although Pulliam purported to seek the unsealing of juror information in her ex parte applications, the names of the jurors were not sealed. (Cf. § 237, subd. (a)(2) [requiring "the court's record of personal juror identifying information of trial jurors, . . . consisting of names, addresses, and telephone numbers," to be sealed "[u]pon the recording of a jury's verdict in a *criminal* jury proceeding" (italics added)].) During voir dire, all jurors stated their names and several stated their areas of residence. This information was readily available to Pulliam. Her ex parte applications, however, failed to show that, equipped with this information, she made any effort—let alone "a diligent effort" (*Eng, supra*, 21 Cal.App.5th at p. 710)—to contact the jurors through other means.

Diligence aside, Pulliam sought juror information to obtain affidavits concerning "whether or not some of the jurors were pressured by their pairs [sic] to go along with the decision of the few not to deliberate and agree[] that [Pulliam] was not an

10

employee of USC and [that] no further deliberation [wa]s needed." Any such evidence discussing the internal thought processes of the jurors during deliberations would have been inadmissible and irrelevant for the purpose of a new trial motion. (See *People v. Steele* (2002) 27 Cal.4th 1230, 1264 ["Because . . . the jurors' mental processes leading to the verdict are of no jural consequence, evidence of those mental processes is of no 'consequence to the determination of the action' [citation] and hence is irrelevant"]; *Eng, supra,* 21 Cal.App.5th at pp. 710–711 [sought after juror statements discussing confusion about instructions and verdict form would have been inadmissible to impeach the verdict]; *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124 (*Bell*) ["Evidence of jurors' internal thought processes is inadmissible to impeach a verdict"].)

Under these circumstances, without any indication that the disclosure of juror information would lead to relevant, admissible evidence not otherwise attainable, the trial court did not abuse its discretion in denying Pulliam's ex parte applications. (*Eng, supra,* 21 Cal.App.5th at pp. 710–711 [no abuse of discretion in denying an ex parte request for juror information where the names of the jurors were available and the information sought from the jurors would have been inadmissible]; see also *Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334, 1340 ["a reviewing court will only interfere with a trial court's exercise of discretion where it finds that under all the evidence, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the challenged result"].)

11

II. *Denial of Motion for New Trial*[9]

    A. <u>Jury misconduct</u>

        1. *Relevant law*

A trial court may vacate a jury verdict and order a new trial based on "[m]isconduct of the jury[.]" (§ 657, subd. (2).) "A party moving for a new trial on the ground of juror misconduct must establish both that misconduct occurred and that the misconduct was prejudicial. [Citations.]" (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 57.) "[A] jury verdict may not be impeached by hearsay affidavits" (*People v. Villagren* (1980) 106 Cal.App.3d 720, 729 (*Villagren*)) or "by assailing [the jurors'] subjective mental processes" (*People v. Elkins* (1981) 123 Cal.App.3d 632, 638 (*Elkins*)).

        2. *Standard of review*

Where, as here, "the trial court provides a statement of reasons" for denying a motion for a new trial, "the appropriate standard of judicial review is one that defers to the trial court's resolution of conflicts in the evidence and inquires only whether the court's decision was an abuse of discretion." (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 636.)

---

[9] Pulliam moved for a new trial based on the statutory grounds of irregularity in the proceedings, jury misconduct, accident or surprise, newly discovered evidence, and error in law. Her opening brief only raises proper challenges to the trial court's denial of her motion brought on the grounds of jury misconduct and surprise. Pulliam has therefore forfeited any argument that the court erred in denying her motion brought on any other ground. (See Cal. Rules of Court, rule 8.204(a)(1)(B); *Benach, supra,* 149 Cal.App.4th at p. 852.)

### 3. *Analysis*

Pulliam proffered no competent evidence to support her claim that the jury committed misconduct by failing to deliberate. She did not submit a declaration from any juror, and her former counsel's declaration regarding statements made to him by jurors constituted inadmissible hearsay. (See *Burns v. 20th Century Ins. Co.* (1992) 9 Cal.App.4th 1666, 1670 (*Burns*) [declarations from an "investigator concerning purported statements and thoughts of two jurors during their deliberations" were "inadmissible hearsay"]; *Villagren*, *supra*, 106 Cal.App.3d at p. 729; *People v. Manson* (1976) 61 Cal.App.3d 102, 216 [attorney's declaration concerning purported statements of jurors was "nothing more nor less than hearsay or double hearsay and [was] incompetent and insufficient to impeach the verdict"].)

More fundamentally, a trial court simply "cannot consider evidence of a juror's subjective reasoning process in deciding whether to grant a new trial based on purported juror misconduct. [Citation.]" (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 75; see also *Bell*, *supra*, 181 Cal.App.4th at p. 1124; *Elkins*, *supra*, 123 Cal.App.3d at p. 638.)

Pulliam provided no evidence to rebut the presumption that the jury followed the trial court's instructions to "[p]ay careful attention to all the instructions"; "consider all the evidence"; "talk with [other jurors] in the jury room"; and "decide the case" after "consider[ing] the evidence with the other members of the jury." (See *People v. Merriman* (2014) 60 Cal.4th 1, 48–49 ["Absent some showing to the contrary, we presume the jury followed the court's instructions"].) Contrary to Pulliam's contention, the amount of time that the jury took to deliberate does not evidence a failure to deliberate. (See *People v. Leonard*

13

(2007) 40 Cal.4th 1370, 1413 ["the brevity of the deliberations proves nothing"]; *Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 310 ["short jury deliberations do not show a failure by a jury to fully consider a case"].)[10]

As "the record contains no admissible evidence to substantiate [Pulliam's] contentions of juror misconduct[,]" we find no abuse of the trial court's discretion in denying the new trial motion. (*Burns, supra,* 9 Cal.App.4th at p. 1672; see also *People v. Dykes* (2009) 46 Cal.4th 731, 810–811 ["a trial court does not abuse its discretion in denying a motion for new trial based upon juror misconduct when the evidence in support constitutes unsworn hearsay"].)

B. Surprise

"'Surprise' as a ground for a new trial denotes some condition or a situation in which a party to an action is unexpectedly placed to his detriment. The condition or situation must have been such that ordinary prudence on the part of the person claiming surprise could not have guarded against and prevented it. Such party must not have been negligent in the

---

[10] At oral argument, Pulliam's counsel relied heavily on *People v. Hedgecock* (1990) 51 Cal.3d 395 (*Hedgecock*) to argue that the trial court should have allowed Pulliam to conduct a limited, in camera examination of jurors regarding their alleged misconduct. *Hedgecock* does not support this position. It held that "when a *criminal* defendant moves for a new trial based on allegations of jury misconduct, the trial court has discretion to conduct an evidentiary hearing to determine the truth of the allegations." (*Id.* at p. 415, italics added.) This is not a criminal case, and Pulliam is not a criminal defendant. Rather, "in civil cases a motion for a new trial based on allegations of jury misconduct must be presented solely by affidavit, without the testimony of witnesses." (*Id.* at p. 414.)

14

circumstances. [Citations.]" (*Wade v. De Bernardi* (1970) 4 Cal.App.3d 967, 971.) A new trial motion based on surprise "must be made upon affidavits[.]" (§ 658; see also § 657, subd. (3); *Linhart v. Nelson* (1976) 18 Cal.3d 641, 645; *Phipps v. Copeland Corporation LLC* (2021) 64 Cal.App.5th 319, 339 (*Phipps*).)

Pulliam did not submit any affidavit regarding the surprises she alleged in her new trial motion.[11] The declarations she submitted pertained to unrelated matters. "It is well established that the proceedings on a motion for new trial are strictly statutory, and the procedure for seeking relief must conform strictly to the statutory mandate. [Citations.]" (*Cembrook v. Sterling Drug Inc.* (1964) 231 Cal.App.2d 52, 66.) The failure to comply with the affidavit requirement to support her motion on the ground of surprise justified its denial.[12]

III. *Alleged Instructional Error*

Pulliam contends that the trial court failed to instruct the jury properly regarding the deposition testimony of Ruby De La Cruz Garma-Williams (Garma-Williams), which was read to the jury after Garma-Williams failed to appear at trial. According to Pulliam, "it was critical that the court explain the importance" of Garma-Williams's deposition testimony prior to it

---

[11]    In the motion, Pulliam contended, inter alia, that she was surprised that certain exhibits were presented by the defense during trial; that USC's counsel argued that Pulliam worked on a day that she did not; and that certain witnesses did not appear to testify.

[12]    "'"We will affirm the trial court's ruling if it is correct on any theory of law applicable to the case, even if for reasons different than those given by the trial court."' [Citations.]" (*Phipps, supra,* 64 Cal.App.5th at p. 339, fn. 9.)

being read to them.[13]  Pulliam cites no authority nor provides cogent argument for this proposition, thus forfeiting it.  (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)

In any event, Pulliam points to no evidence that the trial court abused its discretion with respect to the timing of the instructions or that she suffered prejudice.  (See *Nungaray v. Pleasant Valley Lima Bean Growers & Warehouse Ass'n* (1956) 142 Cal.App.2d 653, 661–662 ["The sequence in which instructions are given is a matter in the sound discretion of the trial court, and a very strong showing of prejudice must be made before a reviewing court will hold its discretion abused"].)  She also forfeited her argument by failing to object at the time Garma-Williams's deposition testimony was read.  (See *id*. at p. 662.)

IV.  *MSS's Motion for Summary Judgment*

Pulliam also argues that the trial court erred by granting MSS's motion for summary judgment.  We lack jurisdiction to consider the argument because this appeal is from the judgment entered on January 6, 2020, in favor of USC only, and not from

---

[13]  The day before Garma-Williams's testimony was read, the trial court instructed the jury under CACI No. 208 (Deposition as Substantive Evidence).  Immediately prior to Pulliam's counsel reading Garma-Williams's deposition testimony, the trial court told the jury:  "Ruby De La Cruz Garma-Williams was previously deposed, and counsel here is going to read to you excerpts of her deposition.  [¶]  I've already explained to you what a deposition is and how you should treat deposition testimony."  And, the jury was again instructed with CACI No. 208 prior to deliberations.

16

any judgment entered in favor of MSS.[14] (See *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 ["A notice of appeal from a judgment alone does not encompass other judgments and separately appealable orders"].)

V. *Disqualification of Trial Judge*

Pulliam asks us to "void all rulings entered by Judge Lu" between April 4, 2018, and August 3, 2020, positing that Judge Lu knew "that her close friend applied to USC for a position" but "failed to disclose this conflict" while presiding over the case. (Bolding omitted.) Pulliam relies on the propositions that "disqualification occurs when the facts creating disqualification arise, not when disqualification is established" (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 776), and that "[o]rders made by a disqualified judge are void" (*Rossco Holdings, Inc. v. Bank of America* (2007) 149 Cal.App.4th 1353, 1362). Thus, she contends, Judge Lu was disqualified even before her friend became USC's general counsel in June 2020, and all of her orders while she was disqualified are void.

We reject this argument, as it is entirely rooted in speculation. Judge Lu voluntarily recused herself upon belief that "her recusal would further the interests of justice." (§ 170.1, subd. (a)(6)(A)(i).) She explained that her close friend had been appointed USC's general counsel in or around June 2020. There is nothing in the record to support Pulliam's contention that grounds for disqualification arose earlier than June 2020, which was months after judgment was entered in this matter and months after Judge Lu ruled on Pulliam's new trial motion.

---

[14] Neither the January 6, 2020, judgment nor Pulliam's notice of appeal refers to MSS.

17

Without any showing of good cause, there is no basis to set aside Judge Lu's orders.  (See § 170.3, subd. (b)(4) ["If grounds for disqualification are first learned of or arise after the judge has made one or more rulings in a proceeding, but before the judge has completed judicial action in a proceeding, the judge shall, unless the disqualification be waived, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge"].)

## DISPOSITION

The judgment is affirmed.  USC is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.



_____, J.
ASHMANN-GERST


We concur:



_____, P. J.
LUI



_____, J.
CHAVEZ


18