Filed 8/29/25  Phillips 66 Company v. Suburban Propane CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PHILLIPS 66 COMPANY et al., <br><br> Defendants, Cross-Complainants and Appellants, <br><br> v. <br><br> SUBURBAN PROPANE, L.P., <br><br> Cross-Defendant and Appellant. | B330358 <br><br> (Los Angeles County Super. Ct. No. BC503381) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Alarcon, Judge.  Affirmed.

Glynn Finley Mortl Hanlon & Friedenberg, Adam Friedenberg, and Jonathan A. Eldredge for Defendants, Cross-Complainants, and Appellants.

Osborn Law and Timothy M. Osborn; Benedon & Serlin, Kelly Riordan Horowitz, and Kian Tamaddoni for Cross-Defendant and Appellant.

Cross-complainants and appellants ConocoPhillips Company and Phillips 66 Company (collectively, ConocoPhillips) appeal the trial court's judgment in favor of cross-defendant and respondent Suburban Propane, LP (Suburban) in a personal injury action arising from a propane tank fire. Suburban has also filed a protective cross-appeal.[1] We consider whether a new trial should have been granted because the jury made irreconcilable findings on a special verdict form—finding Suburban's conduct was not a substantial cause of the accident but answering a subsequent question asking the jurors to apportion responsibility for the accident by stating Suburban was 15 percent responsible.

## I. BACKGROUND

### A. *The Personal Injury Lawsuit*

In March 2013, Felipe and Maria Mireles (the Mireleses) filed a civil complaint alleging Felipe visited a 76 gas station in La Puente, California on October 1, 2011, to have his propane tank filled, and he was grievously injured by a fire that ignited when an employee was filling the tank. The complaint alleged causes of action for negligence and loss of consortium.

The Mireles's complaint named several defendants including ConocoPhillips, Field Energy Corporation (Field Energy), Stephen Dakay (an employee at the gas station), and Suburban, among others. The Mireleses dismissed Suburban from their lawsuit in March 2016.

---

[1] In light of our resolution of the appeal, we need not decide the issues raised in connection with the cross-appeal.

ConocoPhillips subsequently filed a cross-complaint against various entities and individuals including Suburban and Field Energy.[2] In the first iterations of the cross-complaint, ConocoPhillips alleged causes of action for equitable indemnity, contribution, and declaratory relief against Suburban. ConocoPhillips filed a second amended, and operative, cross-complaint thereafter. ConocoPhillips's sole cause of action against Suburban in the operative cross-complaint was equitable indemnity.

The operative cross-complaint alleged Suburban was the owner and supplier of the propane equipment and propane gas at the relevant property—and was solely responsible for the installation, maintenance, and repair of the propane equipment, as well as for the containment of propane gas within the equipment. It further alleged Suburban negligently, carelessly, and recklessly repaired and maintained the propane equipment, failed to properly and adequately train individuals to disburse propane, and otherwise acted negligently, recklessly, and carelessly, thereby causing the fire that injured Felipe Mireles. The equitable indemnity cause of action alleged cross-defendants, including Suburban, were negligent and had control over the operations at the relevant property, maintained the right to prevent the presence of the dangerous condition of the property, and knew or should have known of the condition.

Though the record does not contain documents evidencing the accuracy of this representation, it appears the Mireleses

---

[2] The cross-complaint also alleged claims against Pacific Convenience & Fuels, LLC, Convenience Retailers, LLC, APRO, LLC, Sam and Shireen Hirbod, and Dakay.

3

ultimately went to trial against ConocoPhillips and Field Energy, and ConocoPhillips settled with them for $3.5 million shortly after trial commenced.[3]

### B.    *Trial on the Cross-Complaint*

ConocoPhillips continued litigating its cross-complaint against the various cross-defendants.  On January 30, 2023, after trial proceedings commenced, but before a jury was selected, ConocoPhillips settled with Field Energy and two others, leaving Suburban as the sole remaining cross-defendant.

ConocoPhillips proceeded to trial against Suburban.  The record provided by ConocoPhillips in this appeal does not include reporter's transcripts of the opening statements or any of the evidence and testimony presented at trial.  We have been provided with selected reporter's transcripts for some of the earlier and ensuing proceedings, however: pre-trial hearings, the parties' discussions of jury instructions and the verdict form with the court, the parties' closing statements, and the reading of the verdict.

#### 1.    *Motion in limine*

Prior to the commencement of trial, Suburban filed a motion in limine asking the trial court to exclude strict products liability or ultrahazardous activity theories of liability because ConocoPhillips delayed in disclosing it may rely on such theories—waiting until late December 2022, when pre-trial documents were filed.  ConocoPhillips opposed the motion,

---

[3]    The only evidence ConocoPhillips cited for this factual assertion was its own representation in its trial brief below.

4

contending Suburban had notice earlier when ConocoPhillips's fire causation expert witness was deposed in February 2017 and testified that the propane equipment was defective in certain ways. The trial court granted the motion as to opening statements and jury selection, but it deferred the remainder of the motion for the end of trial. Later, at that point, the trial court ruled it would instruct the jury on strict products liability and ultrahazardous activity.

### 2.    Jury instructions[4]

The court gave the jury instructions on negligence. Among other things, the jury was instructed that to prove its claim that Suburban's negligence harmed the Mireleses, ConocoPhillips was required to prove both that Suburban was negligent and that its negligence was a substantial factor in causing harm to the Mireleses.

Another of the negligence instructions, a modified version of CACI No. 406, addressed Suburban's claim that Field Energy's negligence contributed to the harm. After identifying what Suburban was required to prove to succeed on the claim, the instruction stated: "If you find that the negligence of more than one person including Suburban Propane and/or Field Energy Corporation was a substantial factor in causing Mr. and Mrs. Mireles' harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each entity/person listed on the verdict form. The percentages must total 100 percent. [¶] You will make a separate finding of

---

[4]    The parties had not agreed on a verdict form at the time the jury was instructed.

5

[ConocoPhillips's] total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility."

As already mentioned, the court also instructed the jury on theories of strict liability: strict liability for ultrahazardous activity, manufacturing defects, design defects, and failure to warn. Each of the instructions informed the jury that one of the factors ConocoPhillips was required to prove was that Suburban's propane dispensing "was a substantial factor in causing Mr. and Mrs. Mireles' harm."

The trial court additionally instructed the jury on comparative fault among tortfeasors with a modified version of CACI No. 3800. The instruction stated: "ConocoPhillips/Phillips 66 claim that they paid a $3,500,000 settlement to Mr. and Mrs. Mireles and that Suburban Propane must reimburse ConocoPhillips/Phillips 66 based on Suburban Propane's share of responsibility. In order for ConocoPhillips/Phillips 66 to recover from Suburban Propane, ConocoPhillips/Phillips 66 must prove both of the following: [¶] 1. That Suburban Propane was negligent and/or strictly liable; and [¶] 2. That Suburban Propane's negligence and/or strict liability contributed as a substantial factor in causing Mr. and Mrs. Mireles' harm.

"Suburban Propane claims that ConocoPhillips/Phillips 66 and Field Energy Corporation contributed as a substantial factor in causing Mr. and Mrs. Mireles' harm. To succeed, Suburban Propane must prove both of the following: [¶] 1. That ConocoPhillips/Phillips 66 and Field Energy Corporation were negligent; and [¶] 2. That ConocoPhillips/Phillips 66 and Field Energy Corporation contributed as a substantial factor in causing Mr. and Mrs. Mireles' harm.

6

"You will be asked to determine the percentages of responsibility of Suburban Propane, ConocoPhillips/Phillips 66 and Field Energy Corporation for Mr. and Mrs. Mireles' harm."

The court also instructed the jury that, among other things, in completing the special verdict form it was to "follow [the court's] instructions and the form carefully," to "consider each question separately," and that "[u]nless the verdict form tells all 12 jurors to stop and answer no further questions, every juror must deliberate and vote on all of the remaining questions."

### 3. *Verdict forms*

The reporter's transcript of a hearing (outside the presence of the jury) on February 7, 2023, reflects that both ConocoPhillips and Suburban submitted proposed verdict forms to the trial court. Those proposed forms are not included in the record. After the jury was instructed and closing arguments delivered, Suburban submitted a new proposed verdict form.

On the morning of February 8, 2023, while the jurors were waiting to deliberate, the trial court and counsel discussed the special verdict form that should be given to the jury. The court stated it received two verdict forms the previous day and "revised it based upon the CACI verdict form rather than whatever you came up with." The court acknowledged it had also received a new form that was "double the length," which the court deemed "completely unnecessary." After additional discussion, the court determined it would use the revised verdict form it had prepared.

ConocoPhillips and Suburban objected to various aspects of the special verdict form prepared by the court (but neither objected to, or mentioned, the circumstances under which the jury should be directed to answer a question on the form

7

regarding Suburban and Field Energy's respective percentages of responsibility for the harm to the Mireleses). ConocoPhillips prepared a handwritten edit to the verdict form (the transcript of the hearing does not reveal what the edit was), which it showed to Suburban and the court. Suburban stated it could "live with" the form as edited, but it maintained its objections to other aspects of the form. Counsel then reviewed the form again and, after going off the record, the court stated it would make "those changes" (apparently suggested edits made while off the record).

The minute order ultimately issued in connection with the hearing summarizes the proceedings as follows: "Counsel for both parties are provided a copy of the aforementioned special verdict form. [¶] The Court hears oral argument from counsel for both parties, who have indicated they have reviewed the verdict form and have made revisions to the verdict form. [¶] The Court reviews the revisions and provides a copy of the verdict form, which will be utilized, in open court for counsel to review, prior to the form being provided to the jurors. [¶] Counsel for both parties review and stipulate to the admitted exhibits binder and verdict form, prior to the binder and form being provided to the jury for deliberation."

### C. *The Special Verdict Returned by the Jury*

The verdict form given to the jury had five subsections covering strict liability, negligence, ostensible agency, percentage of responsibility, and settlement.

In the strict liability section, the jury was first asked, "[w]as Suburban Propane engaged in propane dispensing, or did its equipment have a manufacturing or design defect?" The jury answered yes. The verdict form then instructed the jury to

8

answer question two. Question two asked if the Mireleses were harmed. The jury answered yes. The verdict form instructed it to answer question three. Question three asked if the harm was "the kind of harm that would be anticipated as a result of the risk created by propane dispensing?" The jury answered yes and was instructed to go to question four. Question four asked the jury whether Suburban's "propane dispensing or a manufacturing or design defect in its equipment [was] a substantial factor in causing" harm to the Mireleses? The jury answered no. The form instructed the jury that no matter whether its answer to this question four was yes or no, it was to go on and answer question five.

Question five was in the negligence section of the verdict form and asked the jury if Suburban was negligent. The jury answered no. The form instructed the jury that if its answer to question five was no, it was to proceed to question seven, regarding ostensible agency. The jury accordingly skipped question six.

The verdict form did not include any instructions about the circumstances under which the jury was required to answer question eight, the only question in the percentage of responsibility subsection. Question eight asked, "[w]hat percentage of responsible for Mr. and Mrs. Mireles injury do you assign to the following? [sic]"[5] The jury wrote "15%" in the blank

---

[5] During the polling of the jury, the court noticed "somebody did a typo and said, 'percentage of responsible' instead of 'responsibility'" and asked the parties to stipulate that everyone knew that meant "percentage of responsibility." They so stipulated.

9

following Suburban's name, and "85%" in the blank following Field's name.

At counsel's request, the court polled the jury and asked the jurors whether the verdict on each question was their own. The jurors answered in the affirmative, but when the court reached the question regarding percentage of responsibility, one of the jurors disclosed that the jury had averaged the percentages to reach their agreed-upon answer.

The court asked the parties if they wanted the jurors polled further. When the parties said they did, the court began to ask whether each individual juror assigned the percentages of responsibility specified on the verdict form, a juror interrupted, stated only one person would answer "yes" to that question, and suggested the court instead ask what each juror's percentages were. ConocoPhillips asked the court to do that. The court then excused the jury and heard further argument from counsel. ConocoPhillips contended the jury needed to be polled on their individual allocations, but the court stated it would not be going into the minds of the jurors and the mathematics of how they reached their verdict; the court said that if ConocoPhillips believed there was an appellate issue, it could raise it on appeal.

The court then excused the jury. There was an off-the-record pause in proceedings during which counsel appears to have spoken to the jurors after their release. When back on the record, ConocoPhillips said it "wanted to note for the record that we think there may be an internal contradiction within the . . . special verdict . . . ." ConocoPhillips stated it was not clear that a party could be 15 percent at fault but also not a substantial factor cause. The parties agreed to meet and confer and file whatever motions they deemed appropriate.

10

*D.     The Judgment, and ConocoPhillips's Inconsistency*
        *Objection*

Suburban filed a proposed judgment (it is not included in the appellate record). ConocoPhillips objected to the proposed judgment and argued the jury's findings on the special verdict form were internally inconsistent. Specifically, ConocoPhillips argued the jury's answer to question four, in which it found Suburban's propane dispensing or a manufacturing or design defect in its equipment was not a substantial factor in causing harm to the Mireleses, was inconsistent with its answer to question eight, in which it found Suburban was 15 percent responsible for the injuries.

Suburban responded and argued ConocoPhillips waived its internal inconsistency objection to the special verdict because it did not assert the objection before the jury was discharged. It also asserted the verdict could be reconciled.

The trial court overruled ConocoPhillips's objections to the proposed judgment, finding the inconsistency in the special verdict form was "plainly reconciled" and no new trial was necessary. The court found there was "no doubt that the jury unanimously found that Suburban Propane was not strictly liable." The court also noted the jury "unanimously found that Suburban Propane was not negligent." The court acknowledged there "should have been a statement that the jury was to stop and answer no further questions" on the verdict form such that the jury was asked to find a percentage responsibility when they should not have been, but the court believed the jury's answer to that percentage responsibility question was "irrelevant and moot." The court accordingly entered judgment for Suburban.

11

*E.    ConocoPhillips's Motion for New Trial*

ConocoPhillips filed a motion for new trial on the issues of causation and apportionment of fault, arguing the jury's special verdicts on those issues were irreconcilably inconsistent. Suburban opposed the motion, arguing again that ConocoPhillips forfeited any claim regarding the verdict, the verdict was not hopelessly inconsistent, any ambiguity could be reconciled in light of the evidence presented at trial, and ConocoPhillips had not demonstrated the verdict was a miscarriage of justice. The court held a hearing, took the matter under submission, and ultimately denied the motion for new trial on the grounds that ConocoPhillips forfeited its claim by not requesting clarification before the jury was discharged, that the verdict was not inconsistent, and that any apparent inconsistency could be reconciled in light of the pleadings, evidence, and instructions.

## II. DISCUSSION

Reversal is not warranted for three independently sufficient reasons.

First, the record demonstrates counsel for both sides helped draft the special verdict form and the court's minute order indicates both sides stipulated to the verdict form given to the jury (no party disputes this on appeal). In these circumstances, i.e., a jointly prepared and stipulated-to verdict form, any inconsistency in the verdict that resulted is considered invited and waived. (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685-1687 [inconsistency in verdict waived as invited when the parties jointly prepared verdict form given to the jury].)

12

Second, and even putting aside the waiver, in order to review the substance of ConocoPhillips's claim that the jury's causation finding on strict liability claim is irreconcilably inconsistent with its percentage responsibility allocations (and the trial court's contrary finding that the verdict is reconcilable), we would need to interpret the verdict in light of the pleadings, evidence, and instructions. (See, e.g., *Woodcock v. Fontana Scaffolding & Equipment Co.* (1968) 69 Cal.2d 452, 456.) The appellate record we have, however, contains only two of those three necessary elements—ConocoPhillips has not provided the evidence and testimony presented at trial. We therefore cannot assess the correctness of the trial court's finding that the verdict is reconcilable based on the evidence and instructions, and the challenge to the verdict necessarily fails because the record does not affirmatively establish error.

Third, and finally, on the limited record we do have, the verdict appears reconcilable. In a civil case, only nine of 12 jurors need agree to return a verdict. The polling of the jurors in this case indicates the jury answered Suburban was 15 percent responsible for the accident by "averaging" their individual views and only one juror would say he or she agreed with that specific 15 percent allocation of fault. It is therefore possible that nine jurors believed, consistent with the other special verdict findings, that Suburban was zero percent at fault but the jury wrote 15 percent on the form as an average of sorts to account for the views of the dissenting (but legally irrelevant) jurors. Because that is possible, we cannot say the special verdict must be reversed as "'hopelessly ambiguous, hopelessly inconsistent or incomprehensible.'" (*Delos v. Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 661.)

13

*A.   ConocoPhillips's Inconsistent Verdict Argument Is Waived*

There was significant discussion and revision of the special verdict form given to the jury.  The trial court did not initially use any of the forms prepared by the parties and instead prepared a form on its own.  But after that, the record reveals both sides made edits to the form that were accepted by the court (including, apparently, during discussion held off the record) and then stipulated the form could go to the jury as revised.

Assuming for the moment that the jury's findings as reflected on the jointly edited and agreed upon special verdict form are irreconcilably inconsistent, the inconsistency is nevertheless waived on appeal.  That is the holding of *Mesecher*, *supra*, 9 Cal.App.4th 1677.  The court in that case found the jury had returned a hopelessly inconsistent special verdict.  (*Id.* at 1682, 1685.)  The court held, however, that the party aggrieved by the verdict was not entitled to a new trial because the inconsistency in the verdict was waived as having been invited by the jointly prepared verdict form.  (*Id.* at 1685, 1687 ["Drafted jointly by the parties[,] the verdict form makes clear that the jury was permitted to answer 'yes' to *only one* of the questions.  After stating both questions the verdict form provides, 'If you have answered "yes" to *any of the above questions*, answer the following question [about the amount of damages] . . .' (Emphasis added).  The phrase 'any of the above questions' was a tacit invitation to the jury to answer the questions differently.  [¶]  In light of its deliberate choice to avoid the gamble of an all-or-nothing verdict in favor of a compromise verdict, we hold County

14

waived its right to assert error on the ground the ensuing verdicts were inconsistent"].)

The circumstances here are materially the same. After much discussion (including discussion off the record that may have shed further light on the parties' reasons for editing and stipulating to the special verdict form), the court provided the jury with the jointly edited and agreed upon form that invited an inconsistent verdict by failing to inform the jury to skip question eight if it found Suburban was not the substantial cause of the accident. And no inconsistency objection to the form was raised until after the jury was discharged. As in *Mesecher*, the error was accordingly invited and the point is waived on appeal.

### B. *The Record Is Inadequate to Warrant Reversal*

To establish any of its strict liability claims, ConocoPhillips was required to prove either that Suburban's propane dispensing or a manufacturing or design defect in its equipment was a substantial factor in causing harm to the Mireleses. (E.g., *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968 ["In the context of products liability actions, the plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury"]; CACI No. 460, 1201, 1203-1205.) The jury's finding that neither Suburban's propane dispensing nor a manufacturing or design defect in its equipment was a substantial factor in causing harm to the Mireleses thus conclusively established Suburban was not liable for strict liability. The jury also found Suburban was not negligent.

Having reached those two conclusions, there was no basis for finding Suburban liable, and the jury should have been

15

instructed to stop there.  We know, of course, that the jury was not so instructed and went on to make percentage allocations of fault as between Suburban and Field.  But the trial court found the jury's 15 percent response to the question concerning allocation of fault and its other findings precluding liability were reconcilable in light of the pleadings, instructions, and evidence in the case.[6]

---

[6] The trial court did not elaborate, but the jury instructions did not inform the jury that apportionment of fault to Suburban necessarily meant Suburban was a substantial cause of harm to the Mireleses and should be required to reimburse ConocoPhillips some amount.  ConocoPhillips believes the contrary is true, but it relies on one of the *negligence* instructions that stated the jury was to assign percentages of responsibility only "[i]f" the jury found the negligence of more than one person was a substantial factor in causing harm to the Mireleses.  The court's instructions on the negligence claim are irrelevant, however, both because the jury unambiguously found Suburban was not negligent and because ConocoPhillips has not identified the jury's answer to the negligence question on the special verdict form as one of the assertedly inconsistent portions of the verdict.

The jury instructions on strict liability, which *are* pertinent to ConocoPhillips's argument of verdict inconsistency, do not mention percentages of responsibility or advise the jury about whether it was required to calculate such percentages.  The comparative fault instruction stated, without qualification, that the jury would be "asked to determine the percentages of responsibility" of Suburban, ConocoPhillips, and Field Energy but does not expressly link the concepts of negligence or strict liability to the "responsibility" the jury was instructed to assign.

The instructions therefore leave open the possibility that the jury's findings, though perhaps ambiguous, were not hopelessly inconsistent in light of the evidence presented at trial.

ConocoPhillips contends this was improper because the trial court did not reconcile ambiguous portions of the verdict and instead impermissibly chose one inconsistent answer over another.  (See *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 682 [court is not permitted to "choose between inconsistent answers"].)  The problem with this contention is that we have no adequate record to countermand the trial court's determination.  To evaluate a special verdict and determine whether portions are inconsistent, a court must interpret the verdict "from its language considered in connection with the pleadings, evidence and instructions." (*Woodcock, supra,* 69 Cal.2d at 456; see also *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 358*; Oxford v. Foster Wheeler LLC* (2009) 177 Cal.App.4th 700, 718.)  While the appellate record here contains the pleadings and instructions, it does not contain the evidence presented to the jury.[7]

"Where special verdicts appear inconsistent, if any conclusions could be drawn which would explain the apparent conflict, the jury will be deemed to have drawn them."  (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424.)  Without the evidence presented to the jury, we cannot determine whether the evidence would permit us to draw conclusions to explain the apparent conflict.  While it is true that "[w]ith a special verdict, unlike a general verdict or a general

---

[7]     Suburban—not ConocoPhillips—filed a motion to augment the record in connection with its reply brief, seeking to augment the record with testimony from one expert witness.  We deny the motion, which ConocoPhillips opposed, as irrelevant; even if we were to grant the motion, the record would still only contain a small fraction of the evidence presented to the jury.

verdict with special findings, a reviewing court will not infer findings to support the verdict" (*Singh, supra*, 186 Cal.App.4th at 358), this does not supersede the established rule that we presume on appeal that the judgment is correct or relieve an appellant of the burden to provide an adequate record affirmatively demonstrating error.  (E.g., *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575.)  In asking us to reverse without providing the evidence presented at trial, ConocoPhillips effectively asks us to presume the evidence would not have permitted the jury to draw any conclusions that would explain any conflict between its responses to questions four and eight on the verdict form.  We cannot do that under established principles of appellate review, and certainly not to find error in the trial court's express finding to the contrary, which *was* made in light of its awareness of the evidence presented at trial.

C.      *Reversal Is Required Only If the Verdict Is Hopelessly Inconsistent, and the Record Does Not Establish It Is*

Putting aside the waiver of the issue and the inadequacy of the appellate record, the colloquy between the trial court and one of the jurors after the verdict was read indicates the jurors answered special verdict question number eight asking for percentage responsibility determinations by "averaging" the views of the jurors.  The same juror also indicated only one of the twelve would agree with the specific 15 percent number written on the verdict form as Suburban's percentage share of responsibility for the accident.  Of course, we do not know what the views of all the jurors were, nor can we be certain that the juror's disclosures in open court were necessarily correct.  But the

18

point that matters is we do not need to know the views of all the jurors.  Reversal is warranted only if a verdict is hopelessly or irreconcilably inconsistent.  (See, e.g., *Delos*, *supra*, 93 Cal.App.3d at 661; *Mixon v. Riverview Hospital* (1967) 254 Cal.App.2d 364, 375 ["if the verdict is hopelessly ambiguous, hopelessly inconsistent or incomprehensible, a reversal is required"].)

Because a proper verdict could be returned on the vote of only nine of the twelve jurors (Cal. Const., art. I, § 16; *Resch v. Volkswagen of America, Inc.* (1984) 36 Cal.3d 676, 679), it is possible that nine jurors believed Suburban was zero percent responsible for the accident for lack of substantial causation, the other members of the jury believed Suburban was responsible to a greater degree, and the jury provided the 15 percent answer to the percentage responsibility allocation question to account for the views of all the jurors, even those who were unnecessary to return a proper verdict.  This possibility alone defeats ConocoPhillips's claim that the judgment must be reversed as irreconcilably inconsistent.

19

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:


MOOR, J.


WILLIAMS, J.[*]

---

[*] Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.